THE BRUSH-MOORE NEWSPAPERS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 86732, 86946. Promulgated April 29, 1938.

*William H. Vodrey, Esq.*, for the petitioner.
*T. M. Mather, Esq.*, for the respondent.

OPINION.

MELLOTT: In these proceedings, duly consolidated, petitioner seeks a redetermination of (1) the deficiency in income tax determined against it by the Commissioner for the year 1933 in the amount of $7,203.67, and (2) the deficiency in income and excess profits taxes determined against it for the year 1934 in the amounts of $2,796.34 and $918.76.

One issue, common to both years, arises upon the Commissioner's determination that certain payments made by the petitioner to the estate of Harry E. Taylor were "in the nature of advance dividends" upon second preferred stock of the corporation and not deductible as interest paid under section 23 (b) of the Revenue Act of 1932 and the corresponding section of the Revenue Act of 1934. This is the sole issue which will be discussed, the parties having stipulated that the portion of the deficiency attributable to the Commissioner's disallowance of a payment made by the petitioner to the estate of Warren G. Harding in 1933, amounting to $8,867.04, may be settled under Rule 50 of the Board's rules of practice in accordance with a final determination in *Brush-Moore Newspapers, Inc.* v. *Commissioner*, now pending in the United States Circuit Court of Appeals, Sixth Circuit, as No. 7462, the appellant therein seeking to reverse the decision of the Board in *Brush-Moore Newspapers, Inc.*, 33 B. T. A. 362. Effect will be given to the stipulation of the parties on this issue in a settlement under Rule 50.

All of the facts were stipulated, which, summarized, are as follows:

The petitioner is an Ohio corporation with its principal office at 500 Market Avenue South, Canton, Ohio.

In February 1930 the petitioner purchased from Harry E. Taylor, of Portsmouth, Ohio, all the shares of the Times Publishing Co. and the Portsmouth Publishing Co., both of Portsmouth, Ohio, and one-half of the shares of the Tribune Publishing Co. of Ironton, Ohio, for a purchase price paid in part by cash and in part by 11 install-

ment promissory notes in the aggregate amount of $550,000, payable beginning February 9, 1931, at the rate of $50,000 per year. In March 1931 promissory notes were outstanding in the amount of $500,000. In addition to this liability to Taylor, the petitioner had numerous liabilities upon which regular payments were due. It had become difficult for the petitioner to meet all these payments, due to the decrease in revenues during the depression years. The petitioner, therefore, commenced readjustment of its financial structure, in order to accommodate its disbursements to its reduced revenues.

One of these adjustments was the exchange, in March 1931, of the Taylor promissory note in the amount of $400,000 for an equivalent amount of second preferred shares of the petitioner, to eliminate annual principal payments of $50,000. This exchange was made under the provisions of a resolution of the board of directors of petitioner adopted March 25, 1931, which provided that the second note due February 9, 1932, would be paid at maturity; that in exchange for the remaining nine promissory notes in the aggregate amount of $450,000 there should be made and delivered to Taylor a promissory note dated February 7, 1931, payable to his order on or before May 15, 1931, in the amount of $50,000, with interest thereon from date at the rate of 6½ percent per annum; and that:

The Brush-Moore Newspapers, Inc., shall issue and deliver to said Harry E. Taylor Four Thousand (4,000) second preferred shares of The Brush-Moore Newspapers, Inc. If, at any quarter, the regular dividends upon said 4,000 second preferred shares shall not be declared and be paid, The Brush-Moore Newspapers, Inc., shall pay to the registered holder or holders of such second preferred shares at said quarter, as interest in lieu of dividends on 1,500 second preferred shares, a sum of money which added to the current dividends on said 1,500 second preferred shares will amount to $2,625.00; and said amount shall be deducted from the regular dividends on said 1,500 second preferred shares, when, as and if said dividends shall be paid. And if, at any quarter, the regular dividends upon said 4,000 second preferred shares shall not be declared and be paid, The Brush-Moore Newspapers, Inc., so long as said Harry E. Taylor, and/or Pauline G. Taylor, his wife, shall be the owner or owners of said second preferred shares, shall pay to said Harry E. Taylor, or Pauline G. Taylor, at said quarter such additional sum of money not in excess of $4,375.00 per quarter as interest in lieu of dividends on 2,500 shares, as the Board of Directors of The Brush-Moore Newspapers, Inc., may deem necessary for the proper mainte-nance and support of said Harry E. Taylor, and/or Pauline G. Taylor; and said amount shall be deducted from the dividends on said 2,500 shares when and if dividends are paid; * * *

and that petitioner should cause to be assigned to, and deposited with, the First National Bank, of Portsmouth, Ohio, as trustee for Taylor, two certain life insurance policies upon the life of Louis H. Brush, in the aggregate amount of $250,000, which policies should be maintained and kept in full force by the petitioner for the purpose of protecting and guaranteeing Taylor from and against any and all loss in con-

nection with his acceptance of the second preferred shares of the petitioner and for the purpose of guaranteeing the payment and redemption of such second preferred shares, both as to principal and dividends, in accordance with the terms and provisions of the certificates thereof.

Taylor died March 12, 1932, leaving his wife as his only heir. During 1933 and 1934, no payments were made to the second preferred shareholders by the petitioner, other than the payments to the Taylor estate hereafter mentioned. No second preferred dividends were declared during these two years. Louis H. Brush, petitioner's president, personally paid the shareholders 50 cents per share on January 1, 1933. During these two years the petitioner could not legally pay any second preferred dividends, under its articles of incorporation, since its first preferred dividends were partially in default as a result of its decreased earnings.

At the January, April, and July, 1933, quarters, the petitioner paid the Taylor estate, under the minute of March 25, 1931, at the rate of $2,625 per quarter, less the payment made by petitioner's president at the January quarter, or a total of $7,125.

On October 31, 1933, the board of directors of petitioner by resolution determined that it was necessary that the widow of Taylor receive from the petitioner on the 4,000 second preferred shares the sum of $1,500 each month for her proper maintenance and support. Inasmuch as the regular dividends on the 4,000 second preferred shares had not been declared or paid at the July or October, 1933, quarter, the petitioner by corporate resolution determined that it should pay her "as interest in lieu of dividends" $1,500 each month, commencing August 1, 1933, and continuing until further action of the board of directors. The resolution further provided that the amount so paid should be deducted from the dividends on the 4,000 second preferred shares when, as, and if dividends were paid.

During the last five months of 1933, petitioner paid to the Taylor estate under the minute of October 31, 1933, $1,500 per month, making a total of $7,500 for the five months and a total for the year of $14,625. In 1934, petitioner paid the Taylor estate, under the minute of October 31, 1933, $1,500 per month, making a total of $18,000 plus an additional payment of $1,000 in September 1934, under a minute of petitioner's board of directors dated September 18, 1934, authorizing such additional payment "as interest in lieu of dividends" for the proper support and maintenance of Mrs. Taylor.

During the first half of 1935, all the arrears in second preferred dividends were paid, after deducting the amounts which had been paid to the Taylor estate, pursuant to resolutions adopted by petitioner's board of directors February 15, March 26, and May 27,

1935, each of which declared and authorized the payment of a portion of the dividends in arrears but specifically provided that "no dividends are declared or shall be paid on the shares in the name of Harry E. Taylor, in the amount of the interest in lieu of dividends previously paid on said shares."

The issue, therefore, is simply whether the payments made to the Taylors, under the above facts, were interest, as reported by petitioner in its return, or were in the nature of advance dividends, as found by the respondent in his determination of a deficiency.

Petitioner, in support of its contention that the payments were, and were correctly reported as, interest, cites and relies upon the following cases: *Richmond, Fredericksburg & Potomac Railroad Co.*, 33 B. T. A. 895; affd., 90 Fed. (2d) 971; *National Grange Mutual Liability Co.*, 31 B. T. A. 666; affd., 80 Fed. (2d) 316; and *Proctor Shop, Inc.*, 30 B. T. A. 721; affd., 82 Fed. (2d) 792. We have carefully examined the cited cases and many others decided by the courts and this Board wherein the question under consideration was substantially the same as that here involved. As was pointed out by the Board in *Proctor Shop, Inc., supra*, "None of the decided cases lay down any comprehensive rule by which the question presented may be decided in all cases, and 'the decision in each case turns upon the facts of that case.' * * * In each case it must be determined whether the real transaction was that of an investment in the corporation or a loan to it. On this the designation of the instrument issued by the corporation, while not to be ignored, is not conclusive. *I. Unterberg & Co.*, 2 B. T. A. 274. The real intention of the parties is to be sought and, in order to establish it, evidence *aliunde* the contract is admissible. * * * If the evidence establishes 'that dividends paid are, according to the intent of the parties, in fact interest, and the stock on which the dividends are paid is merely held by the creditor as security, it makes no difference what the reason was for paying in that form.' "

It may be noted that we do not have here a situation in which there has been incorporated in preferred stock certificates a provision guaranteeing the payment of dividends or interest whether profits are earned or not. See *Proctor Shop, Inc., supra.* Cf. *Palmer, Stacy-Merrill, Inc.*, 37 B. T. A. 530. The stipulated facts do not disclose the terms and conditions contained in the preferred stock certificates. In the absence of such facts we must assume that the certificates contained the usual provisions entitling the holders to share in the earnings of the corporation and to receive the par value of the stock, if it was redeemed by the corporation, or their aliquot part of the assets in the event of dissolution. (See sec. 8671, Ohio General Code.)

The payments in question were not made to Taylor under the terms of the preferred stock certificates, but under the terms of the resolu-

tion of petitioner's board of directors adopted coincidentally with the issuance of the shares to him. From the wording of the resolution it is apparent that the corporation had to guarantee Taylor against the possibility that he might lose either principal or interest by reason of his surrender of the notes for second preferred stock. If the corporation had sufficient earnings, Taylor was to get nothing under the terms of the collateral agreement. If the corporation did not have sufficient earnings, as in the taxable years before us, Taylor became entitled to payments which, when added to any earnings available for distribution to second preferred stockholders, would give him a 7 percent return on $400,000. But any payments made to Taylor in years when the corporation did not have sufficient earnings to pay dividends to all of its second preferred stockholders were to be taken into consideration in later years when the earnings of the corporation justified the payment of back dividends due on its second preferred stock, and were to be charged against the dividends he would then be entitled to receive but for the prior payments. Taylor thus became entitled to certain benefits which were not enjoyed by other holders of petitioner's second preferred stock.

In *Richmond, Fredericksburg & Potomac Railroad Co.*, *supra*, this Board, in determining that fixed periodic payments made to holders of "guaranteed stock" were in reality interest although denominated "dividends", said: "It seems to us  *  *  *  that in this case the basic test to be applied is whether the stockholder invested his money with the view of receiving a return from its use dependent on the successful operation of the company, on the one hand, or, on the other hand, whether he invested with no regard to the profit or loss which the company might enjoy or sustain, but with a dependency on the regular payment of compensation for the use of the money and the assurance of its ultimate repayment."

We believe the same test should be applied here. Taylor's position after the exchange was in many respects similar to that of the holders of the "guaranteed stock" in the *Richmond, Fredericksburg & Potomac Railroad Co.* case. When he surrendered his notes he evidently demanded and received a promise of practically the same fixed return on the $400,000 that he had been receiving as a creditor and some assurance that the principal amount would eventually be repaid. He was entitled to receive, if he demanded it, $28,000 per annum, irrespective of the successful operation of the corporation, or its earnings. The only effect of the transaction was to postpone indefinitely the payment of the principal sum. Under these circumstances we are of the opinion that Taylor did not abandon his position as a creditor when he surrendered his notes to the petitioner, and the payments made were compensation for the use and detention of Taylor's money and therefore interest.

We hold, therefore, that the respondent erred in disallowing as deductions the amounts paid to the Taylor estate in 1933 and 1934. We shall defer the entering of decision herein until final determination of the *Brush-Moore Newspapers, Inc., supra,* in accordance with the stipulation of the parties, and,

*Judgment will be entered under Rule 50.*

Reviewed by the Board.

HILL dissents.