NORTHERN REFRIGERATOR LINE, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 108749. Promulgated March 24, 1943.

*Clive C. Handy, Esq.*, for the petitioner.
*Clay C. Holmes, Esq.*, for the respondent.

827

OPINION.

Kern, *Judge:* The single question presented for our determination is whether certain payments were payment of "interest * * * on indebtedness" and therefore deductible under section 23 (b) of the Revenue Act of 1934, or were dividends. This depends entirely upon the character of the relationship between the petitioner and holders of its preferred stock.

The petitioner contends that the relationship was that of debtor and creditor, and that the so-called preferred stock was, in fact, evidence of indebtedness. This contention is based chiefly on the existence of a definite maturity date of the preferred stock, the provision for fixed and cumulative dividends, and the guaranty of the payment of dividends and redemption price of the stock by Merchants Despatch, Inc.

The fact that the certificate which evidenced the relationship was denominated by petitioner, both in the certificate itself and in its

articles of incorporation, as preferred stock, and treated on its books as such, though not conclusive, is one of the criteria available to us in our inquiry into this question, since it will not lightly be assumed that the parties gave an erroneous name to their transaction. *Kentucky River Coal Corporation*, 3 B. T. A. 644; *Kentucky River Coal Corporation* v. *Lucas*, 51 Fed. (2d) 586, affd., 63 Fed. (2d) 1007.

It is a fundamental rule in corporation law that the relationship which exists between a corporation and the holder of its stock, by virtue of such stock ownership, can not be at the same time both one of corporation and stockholder, and also debtor and creditor. The same instrument can not sustain both relationships. *Angelus Building & Investment Co.*, 20 B. T. A. 667, 674; affd., 57 Fed. (2d) 130; certiorari denied, 286 U. S. 562; *Warren* v. *King*, 108 U. S. 389; *Armstrong* v. *Union Trust & Savings Bank*, 248 Fed. 268.

A definite maturity date is, in itself, not conclusive evidence of a debtor-creditor relationship. The fact that this stock could be redeemed by the corporation only if it could be done without impairment of its capital distinguishes this case from that of *Commissioner* v. *O. P. P. Holding Corporation*, 76 Fed. (2d) 11, cited by petitioner, where the court said:

> The final criterion between creditor and shareholder, we believe to be the contingency of payment. * * * The interest * * * could be collected, together with the principal, in 1954, from the corpus of the debtor's property, regardless of whether there should be a surplus.

A very real contingency of payment was imposed in the instant case by the use of words in the preferred stock certificates which limited the obligation of the petitioner to retire this stock by the proviso: "provided it may do so without an impairment of its capital."

The existence of a definite maturity date has been held to be inconclusive of a debtor-creditor relationship in two recently decided cases on the subject, *Commissioner* v. *Meridian & Thirteenth Realty Co.*, 132 Fed. (2d) 182, and *Pacific Southwest Realty Co.* v. *Commissioner*, 128 Fed (2d) 815.

The provision for a fixed dividend has been sometimes regarded as tending to establish the relationship as that of debtor and creditor, but where, as here, the interest is payable, not at all events, but only out of net earnings, or other funds "available for dividends," it is more indicative of a normal stockholding relationship. *Badger Lumber Co.*, 23 B. T. A. 362; *Pacific Southwest Realty Co.* v. *Commissioner, supra.*

Preference of the claims of preferred stockholders to those of common stockholders upon dissolution of the corporation, to the extent of the face or declared value of their stock, plus unpaid cumulative dividends, is almost invariably a characteristic of preferred stock.

The same is true of the provision that preferred stockholders shall not have voting rights except in case of default in payment of dividends. The common stock is quite generally the repository of exclusive voting rights and rights of participation in the management of the corporation.

In most of the cases in which preferred stock has been held to be, in fact, evidence of debt, the courts have found, from the circumstances shown to have surrounded the issuance of the stock, that the intention of the parties was the creation of a debtor-creditor relationship. We have no evidence of the relationship of the various holders of the preferred stock and the petitioner which led up to the issuance of this stock; indeed, we do not know the identity of such stockholders, beyond the statement in the stipulation that the stock is "owned and held generally by various persons and corporations." We have nothing before us from which we could determine that the stockholders intended only to lend their money to the corporation, or that the corporation accepted it as such. We must rely wholly upon the documents which were drawn up as evidence of the relationship, and they contain no provision which is incompatible with the relationship which they purport to show, that of corporation and preferred stockholder. In fact, the Delaware laws make specific provision for the issuance by corporations of preferred stock with definite maturity dates, bearing fixed, cumulative dividends, with or without voting powers, and with such preferences upon dissolution over common stockholders as may be agreed upon, and we do not feel, therefore, that the existence of any or all of these features can be said to take the stock out of that classification.

Petitioner relies heavily upon the fact that under a separate contract the Merchants Despatch Transportation Corporation guaranteed the payment of the dividends and the ultimate redemption of the stock as provided in the articles of incorporation and the certificates of stock. Apparently its theory is that this contract gives to the preferred stockholders that security of payment at all events, without regard to the existence or extent of a corporate surplus or earnings, which is a feature of the debtor-creditor relationship. But that security of payment springs not from their relationship with petitioner, but from the contract of guaranty executed by another corporation, the holder of the common stock. It is too well settled to require much emphasis here that a contract of guaranty is an undertaking separate and distinct from the principal obligation. The debtor is not a party to the guaranty, and the guarantor is not a party to the principal obligation, and there is no privity between them. *Bourne* v. *Board of Sup'rs of Henrico Co.*, 161 Va. 678; 172 S. E. 245; *New Bedford Morris Plan Co.* v. *Hicks*, 52 R. I. 74; 157 Atl. 421; *Coleman* v. *Fuller*, 105 N. C. 328; 11 S. E. 175. The

right of the preferred stockholders to demand payment from petitioner upon maturity is still dependent upon petitioner's ability to pay without impairment of its capital. The fact that the stockholders may then look to and enforce payment by another does not affect the character of their relationship with petitioner.

In the case of *Hazel-Atlas Glass Co.* v. *Van Dyk & Reeves, Inc.*, 8 Fed. (2d) 716, it was held that the relationship between the corporation and its preferred stockholder was not affected by an agreement by the owners of the common stock to make good any preferred stock dividend not paid by the corporation and to redeem the preferred stock in accordance with the terms of the contract between the corporation and the preferred stockholder, if the corporation failed to do so. The court said, at page 718:

> It is equally clear that no agreement that was made or could be made between Van Dyk [the preferred stockholder] on the one side and Reeves and Ellis [common stockholders] on the other, changed or could change the nature of the obligation which the corporation had assumed under the agreement which it and Van Dyk had made with each other. It certainly did not change the obligation of the corporation or the rights of Van Dyk as against the corporation, that Reeves and Ellis agreed to make good to Van Dyk the amount of any dividends not paid to Van Dyk by the corporation. Neither was it affected by the fact that it was agreed that, if the corporation failed to redeem Van Dyk's stock in accordance with its agreement with him, then Reeves and Ellis agreed that they would purchase from him the stock at par plus unpaid dividends.

> \* \* \* \* \* \* \*

> But in the instant case the corporation did not guarantee the dividends. The guaranty was on the part of Reeves and Ellis, who agreed with Van Dyk that they would "make good" to him the amount of dividends not paid to him by the corporation. In Machen on Corporations, vol. 1, § 541, it is stated that preferred shareholders are members of the company, and not creditors, and the author goes on in section 542 to point out some of the circumstances which are insufficient to confer on such shareholders the rights of creditors. He says, among other things: "Nor is the fact that the preferred stockholders do not possess the right of voting at shareholders' meetings sufficient evidence that they should be deemed creditors rather than members of the corporation. Indeed, even if payment of the preferred dividend is guaranteed by the company, the preferred shareholders are entitled to nothing except out of net profits; the guaranty will be construed to apply only to payments out of any funds legally available for dividends. And, of course, a guaranty by another corporation of the punctual payment of the preferred dividend would not affect in any way the nature of the preferred shareholders' position. \* \* \*"

We conclude that the payments here in question were dividends and not "interest \* \* \* on indebtedness", and, therefore, were not deductible from petitioner's gross income for the taxable years.

*Decision will be entered under Rule 50.*