VERIFINE DAIRY PRODUCTS CORPORATION OF SHEBOYGAN, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 108460. Promulgated February 15, 1944.

*John S. Best, Esq.,* for the petitioner.
*Carroll Walker, Esq.* for the respondent.

274

BLACK, *Judge*: Our question in this proceeding is to determine whether each of the two issues of "preferred stock" is, notwithstanding

its respective name, in reality capital stock or indebtedness. In determining this question we shall first consider the legal effect of the so-called preferred stock, first issue.

The material provisions of section 23 (b) of the Revenue Acts of 1934 and 1936, and of article 23 (b)–1 of Regulations 86 and 94 are identical, respectively, and are set forth in the margin.[1]

The question of whether a certain obligation is in reality capital stock or indebtedness and whether the increment therefrom is therefore a dividend or interest has often been the subject of tax litigation. The leading cases are collected and analyzed in Mertens, Law of Federal Income Taxation, vol. 4, sec. 26.10. The Seventh Circuit, in *Commissioner* v. *Meridian & Thirteenth Realty Co.*, 132 Fed. (2d) 182, enumerated the criteria named to aid in the determination as follows:

Fixed maturity; payment of dividends out of earnings only; cumulative dividends; participation in management; whether unpaid dividends bear interest; right to sue in case of default, and whether status is equal to, or inferior to that of regular corporate crdeitors; nomenclature used in the documents; intent of the parties.

In the instant proceeding the preferred stock, first issue, was in the form of stock certificates. The certificates outstanding during the taxable years involved had petitioner's name at the top and immediately underneath were the words and figures: "CAPITAL STOCK, $550,000. Common Stock $300,000; Preferred Stock. First Issue. $100,000; Preferred Stock, Second Issue, $150,000." They certified that the holder was "the owner of ___ Shares of par value of $100 each, full paid and non-assessable, of the Preferred Stock, First Issue, of the Sheboygan Dairy Products Company, transferable only on the books of the Company by the holder thereof in person, or by duly authorized attorney upon the surrender of this Certificate." They then contained in fine print the provisions of article third of petitioner's articles of incorporation as amended on January 25, 1923, and as again amended on February 23, 1927. Across the face of the certificates was stamped "THE ANNUAL DIVIDEND ON THIS PREFERRED STOCK HAS BEEN REDUCED FROM SEVEN TO SIX PER CENT AS PER AGREEMENT OF DECEMBER 15, 1934."

Petitioner concedes that prior to the amendment of article third of petitioner's articles of incorporation on February 23, 1927, the preferred stock, first issue, represented a proprietary interest rather than an indebtedness. Prior to the amendment of February 23, 1927, as provided in article third and the certificates, the whole or any part of the preferred stock, first issue, could be "redeemed, retired or can-

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\* \* \* \* \* \* \*

(b) INTEREST.—All interest paid or accrued within the taxable year on indebtedness \* \* \*.

ART. 23 (b)–1. *Interest.*— \* \* \* So-called interest on preferred stock, which is in reality a dividend thereon, can not be deducted in computing net income. \* \* \*

celled at any time after three (3) years from the date of its issue in such manner as the board of directors may determine." The amendment of February 23, 1927, continued this provision except that it changed the period following the word "determine" to a semicolon and added thereto the following:

but in any event, ten (10) per cent. of such PREFERRED STOCK, FIRST ISSUE, shall be redeemed on January 1, 1940, and an equal amount thereof each year thereafter until the full amount of said PREFERRED STOCK, FIRST ISSUE, SHALL BE REDEEMED.

Petitioner contends that by changing this one criterion, namely. fixed maturity date, the certificates were changed from actual certificates of preferred stock to actual certificates of indebtedness. We do not agree. A very similar provision was present in *Parisian, Inc.* v. *Commissioner*, 131 Fed. (2d) 394, affirming memorandum opinion of the Board. In holding that the dividends paid on the preferred stock were not interest. the court in that case said :

* * * Nothing in the provision for the payment of dividends on, and the retirement of, the preferred stock at the rate of 10 percent annually beginning after the fifth year, at all supports the view that the obligation, in form a stock certificate. was any other than what it purported to be. Nothing in the evidence outside of the certificate supports the view that the parties intended it to be a debt. Indeed, it is stipulated that the bank, at all times in its books of account and its Federal tax returns for all years in which such payments were made, has treated the payments made by petitioner as dividends and the certificates as shares of stock ; and that the petitioner for a number of years treated the payments as dividends paid by it, and has treated, and continues to treat, the shares as a part of its capital structure. It is true enough, as petitioner insists, that the form of an obligation is not controlling upon whether it is really a debt or a stock interest, but it is certainly strongly persuasive, and when, as here, in actual practice, no challenge has been made of the form as representing anything but the fact, a petitioner who, in order to obtain a tax benefit by denying it, seeks to deny reality to that form must come with convincing evidence that the obligation is something other than it appears to be. Petitioner has not sustained this burden. * * *

In determining a question of this kind, of extreme importance is the intent of the parties. *Commissioner* v. *Meridian & Thirteenth Realty Co.*, *supra*. For more than ten years after the amendment petitioner continued to treat the certificates as capital stock rather than indebtedness. This shows a very strong intention on the part of petitioner as to the true nature of the certificates.

The certificates and articles of incorporation provided that the certificate holders "shall be entitled to receive, when and as declared by the Board of Directors out of the surplus earnings or undivided profits of the company, annual dividends" of 6 percent per annum and no more. Such provisions are not characteristics of a debt. Petitioner argues, however, that upon the arrival of the fixed maturity

date the unpaid accumulated dividends had to be paid independently of any action by petitioner's board of directors and independently of whether there existed surplus earnings sufficient to cover the amount to be redeemed, and that, therefore, the certificates were in reality certificates of indebtedness. Substantially this same argument was made by the taxpayer in *Pacific Southwest Realty Co.* v. *Commissioner*, 128 Fed. (2d) 815, and was rejected.

Petitioner also argues that the preferred stock, first issue, after the 1927 amendment, must be held to constitute indebtedness for the reason that the articles of incorporation as amended are in conflict with section 182.13 of the Wisconsin Statutes, which provide in part as follows:

182.13 Preferred stock. (1) Any corporation may, in its original articles, or by amendment thereto adopted by a three-fourths vote of the stock, provide for preferred stock; for the payment of dividends thereon at a specified rate before dividends are paid upon the common stock; for the accumulation of such dividends; for a preference of such preferred stock *not exceeding the par value thereof*, over the common stock in the distribution of the corporate assets other than profits; for the redemption of such preferred stock, and for denying or restricting the voting power of such preferred stock. [Italics supplied.]

We are not impressed with this argument. In our opinion the only effect this alleged conflict with the preferred stock provisions of the Wisconsin Statutes might have would be an evidentiary indication of the intent of the parties at the time the security was issued. As indicated above, we are satisfied that the intent of the parties was to issue preferred stock and nothing else. And this intent is of "extreme importance." *Commissioner* v. *Meridian & Thirteenth Realty Co.*, *supra*. Cf. *Northern Refrigerator Line, Inc.*, 1 T. C. 824.

The certificates and articles of incorporation also provided that the preferred stock, first issue, shall have no voting power. This criterion would exert no weight on the indebtedness side of the scales, as that provision was specifically permitted by section 182.13 (1) of the Wisconsin Statutes, *supra*.

In regard to whether the status of the certificate holders of the preferred stock, first issue, was equal to, or inferior to, that of regular corporate creditors, we think it clearly was inferior. The certificate holders held themselves out to the public as preferred stockholders. In doing so they could hardly claim that they had a status equal to that of a regular corporate creditor. See *John Wanamaker, Philadelphia* v. *Commissioner*, 139 Fed. (2d) 690, affirming 1 T. C. 937.

As far as the nomenclature criterion is concerned, the weight is all very decidedly on the side of capital stock. After considering all of the criteria, we are convinced that the preferred stock, first issue, was clearly capital stock rather than indebtedness. It follows that the

respondent was correct in refusing to allow petitioner any deduction for interest on account of such stock under section 23 (b), *supra*.

We shall now consider the legal effect of the so-called preferred stock, second issue. In form the certificates evidencing this issue were identical in every respect with the certificates evidencing the first issue, except that they certified that the holder was the owner of shares of the preferred stock, second issue, of petitioner. In issuing this security petitioner substantially followed section 182.13 (4) of the Wisconsin Statutes, which provides as follows:

(4) The articles may be amended by a three-fourths vote of the common stock to provide for a second issue of preferred stock, subject to all the rights and equities of the first issue of preferred stock, and the certificates of such second issue shall have plainly printed across the face the words "Preferred Stock. Second Issue," and shall recite all the terms, restrictions and regulations provided in the articles in relation to such second issue of preferred stock.

The 1,500 shares of preferred stock, second issue, were all issued to three common stockholders in exchange for certain shares of petitioner's common stock upon condition that petitioner enter into three separate agreements to "repurchase" said 1.500 shares on definite dates at par plus accrued dividends and to deposit certain collateral for the faithful performance of the agreements. In its brief petitioner explains its contention with respect to this security as follows:

The petitioner makes no claim that its "preferred stock, second issue" standing alone and apart from the aforesaid contracts constituted an evidence of indebtedness. On the other hand, it is the petitioner's position that the said contracts, together with the charter provisions of the "preferred stock, second issue," when read together, lead inescapably to the conclusion that the petitioner was obligated to pay fixed and determinable amounts of money at definite dates, this obligation being secured by the deposit of collateral, and that the obligation thus imposed by contract constituted the petitioner a debtor of the individuals with whom it contracted.

Petitioner contends that the essence of the transaction was a purchase by petitioner of shares of its common stock under a secured agreement to pay the purchase price in installments over a period of years. We do not think that contention coincides with the intent of the parties. It seems to us that petitioner was clearly following section 182.13 (4) of the Wisconsin Statutes and intended to issue and actually did issue the 1,500 shares of preferred stock, second issue, in exchange for some of its common stock.

The three contracts of February 15, 1923, were simply contracts between petitioner and its second issue preferred stockholders whereby petitioner agreed to purchase the preferred stock. second issue, from the stockholders in installments over a fifteen-year period and to deposit certain collateral with the stockholders as security "for the faithful performance of this agreement to purchase said Preferred

stock, second issue, from the first party at the times and in the manner above set forth." It will be noted that the collateral security was not placed by the corporation with the stockholders to guarantee the payment of annual dividends on the second preferred stock, but was placed with the stockholders to guarantee that petitioner would carry out its agreement to repurchase the stock from time to time. This did not convert the preferred stock, second issue, from capital stock of the company into indebtedness of the company. We can see no greater reason for holding the preferred stock, second issue, here in question to be an indebtedness than existed in connection with the 10.000 shares of preferred stock involved in *John Wanamaker Philadelphia* v. *Commissioner*, *supra*.

The respondent's determination is sustained.

*Decision will be entered for the respondent.*