OPINION. Withey, Judge: The petitioner contends that the exchange of subdivision lots for its stock and bonds was an exchange of capital stock, which had no established market value, for subdivision lots,- which likewise had no established market value, and that, therefore, no recognizable taxable gain has been realized. Further, petitioner contends that, assuming a taxable gain was realized, then the exchanges were in the nature of a partial liquidation, the bonds actually being stock. Lastly, petitioner contends that if we should find that a sale occurred, then the basis for each subdivision lot should include a proportionate part of the cost of the land transferred to Tucson Country Club and the $250,000 which it loaned to the club to construct a golf course. Respondent contends (1) that the petitioner handled the transactions as sales, and it cannot now change the facts to support a different legal theory; (2) that the land transferred to the Tucson Country Club was not permanently and irrevocably transferred and, therefore, must have a cost basis; (3) that the petitioner’s stockholders through memberships in the Tucson Country Club received a personal benefit as distinguished from a real estate benefit running to the basis of the lots sold; and (4) that the $250,000 loaned to Tucson Country Club cannot be a part of the basis of the lots sold in 1948 as it was not forgiven until in June 1949. Respondent also contends that if we should determine that the loan of $250,000 was a proper addition to the cost basis of petitioner’s lots, then we should hold that the deduction of $16,815.39 taken by petitioner on account of interest accrued on its outstanding debenture bonds was not allowable. The record before us shows that during 1947,100 persons subscribed for 100 units of petitioner’s capital at $5,000 per unit. The petitioner issued three $1,000 bonds and 20 shares of $100 par value common stock for each subscription for a unit of capital. In the light of the issuance of 2,000 shares of common stock for cash, it appears to us that petitioner’s stock was worth $100 per share. The record also discloses that petitioner made 62 sales of its subdivision lots during 1948 at prices varying from $2,500 to $6,000 per lot. In payment for these lots, the petitioner received its previously issued bonds and stock at par value, plus varying amounts of cash, in some cases as much as $3,000. It also sold two lots for $4,350 and $3,500, cash, respectively. In view of these 62 sales made at amounts determined by the petitioner, it appears to us that petitioner’s lots had an established market value. As was said in Dorsey Co. v. Commissioner, 76 F. 2d 339: when in a business exchange for its real estate it receives in part its own stock it is converting by sale a previous purchase, and if what it receives has a fair market value the gain or loss realized in the exchange must be measured and taxed. * * * We, therefore, conclude that petitioner’s first contention is without merit. Further, petitioner contends that the exchange of its stock and bonds for its lots was in the nature of a partial liquidation and should not result in taxable income to it. The petitioner cites no authority in support of this contention. In connection with this contention, petitioner also contends that the bonds should be considered as stock. One of the bonds was offered ill evidence and a careful examination of it discloses nothing to indicate that it was intended to represent an investment in petitioner’s capital stock. While it is true that the bonds were not secured by a mortgage, that fact alone does not establish that they were stock. The bonds recite the promise of the petitioner to pay to the holder the sum of $1,000, on or before January 1, 1962, and to pay interest at 4 per cent per annum from date of issue, payable on the 1st day of March of each year. While not determinative of the issue, it is significant that petitioner accrued interest payable on the bonds and deducted it on its income tax return. There is no contingency in regard to the payment of either interest or principal. Cf. Northern Refrigerator Line, Inc., 1 T. C. 824. We conclude that the bondholders were creditors of petitioner and not stockholders. We, therefore, need only decide whether the cancellation by the petitioner of the $23,400 par value of its stock turned in for its lots was a partial liquidation. The parties have stipulated that lots were offered to petitioner’s stockholders at the prices established by petitioner and that the stockholders were permitted to turn in their original stock and bonds in payment at par for the lots. Section 115 (i) of the Internal Revenue Code of 1939 defines “amounts distributed in partial liquidation” as meaning: a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock. Whether the disposition of the lots was a sale or distribution in statutory liquidation is entirely factual. C. M. Menzies, Inc., 34 B. T. A. 163, 169. The basic transaction here was the sale of lots by petitioner to its stockholders. Simply because the petitioner received its own stock in payment for lots does not change the transaction from a sale to a distribution in liquidation. A gain or loss may be realized by a corporation when it sells its assets for its own stock.[1] We have decided that the stock had value. This value is to be considered as part of the consideration received for the lot. We conclude that the corporation was dealing in its stock as if it were stock in another corporation and that this transaction was not a partial distribution. See Allyne-Zerk Co. v. Commissioner, 83 F. 2d 525, affirming 29 B. T. A. 1194. Lastly, the petitioner contends that the cost of the property transferred to Tucson Country Club, $120,000, and $250,000 loaned to it should be added to the cost of the lots. Petitioner urges that it was organized to make a profit, that it had a definite business purpose in establishing Tucson Country Club, and that it promised the purchasers of its stock that it would establish a country club. It contends that the dedication of the land to be used as a country club is analogous to the dedication of land to be used for streets. Commissioner v. Laguna Land & W. Co., 118 F. 2d 112. Respondent contends the land was not irrevocably transferred to Tucson Country Club and that, based on the holding in Biscayne Bay Islands Co., 23 B. T. A. 731, some cost basis must be allocated to the land. In the Biscayne Bay case it was stated that: [the] area [set aside for a playground for ten years] was not permanently and irrevocably dedicated to the public * * * It is unlike the area used for public streets, which is permanently beyond the possibility of sale and gain * * * It was there decided that some cost must be allocated to the playground. In the present case, the petitioner transferred the land to the club with the proviso that it was to be used for a nonprofit country club and to be kept as such and not sold by the club. The deed further provides that the land is not to be levied upon and, in the event of bankruptcy, among other contingencies, the land shall revert to the petitioner. These provisions were to be in effect as long as the land restrictions were in effect, i. e., until January 1,1990, or, unless earlier, 75 per cent of the owners of the lots voted to waive the restrictions. We believe this situation is substantially different from that in Biscayne Bay. While the petitioner’s stockholders may have received some personal benefit from joining Tucson Country Club, the basic purpose of petitioner in transferring the land was to bring about the construction of a country club so as to induce people to buy nearby lots. We, therefore, conclude that the cost of the property transferred to Tucson Country Club, $120,000, should be regarded as part of the basis of the lots. See Kentucky Band, Gas & Oil Co., 2 B. T. A. 838. The situation with regard to the $250,000 which petitioner loaned to Tucson Country Club to construct a golf course and other facilities is entirely different. While it is well established that petitioner has the right to include in its cost such estimated future expenditures for the development of the property as required by the contracts of sale, Cambria Development Co., 34 B. T. A. 1155, it has also been long recognized that income taxes are to be computed on an annual basis and on the basis of facts which the taxpayer knew or could reasonably be expected to know at the end of its taxable year. Burnet v. Sanford & Brooks Co., 282 U. S. 359; Baltimore Transfer Co., 8 T. C. 1. From an examination of the record before us, we find that on May 20, 1948, the petitioner made a supplemental arrangement with Tucson Country Club in regard to the repayment of the $250,000 loan. So far as shown, the petitioner still considered the loan to be collectible at the end of 1948 and the record affords no basis for a finding that it was otherwise. It was not until March 1949, when petitioner’s stockholders decided that the club would be unable to pay the loan, that a decision was reached as to the uncollectibility of the loan. In view of the foregoing, we conclude that no part of the $250,000 loan was includible as part of the cost of the lots sold in 1948. In view of our above holding, it is unnecessary to consider the respondent’s contention regarding the deductibility of interest on petitioner’s debentures. Reviewed by the Court. Decision will be entered wader Bule 50. Regs. 111, sec. 29.22(a)-15, provides: Acquisition ob Disposition by a Cobpobation op Its Own Capital Stock. — Whether the acquisition or disposition by a corporation of shares of its own capital stock gives rise to taxable gain or deductible loss depends upon the real nature of the transaction, which is to be ascertained from all its facts and circumstances. The receipt by a corporation of the subscription price of shares of Its capital stock upon their original Issuance gives rise to neither taxable gain nor deductible loss, whether the subscription or issue price be in excess of, or less than, the par or stated value of such stock. But If a corporation deals in Its own shares as it might in the shares of another corporation, the resulting gain or loss is to be computed In the same manner as though the corporation were dealing In the shares of another. So also If the corporation receives Its own stock as consideration upon the sale of property by it, or in satisfaction of Indebtedness to it, the gain or loss resulting is to be computed in the same manner as though the payment had been made in any other property. Any gain derived from such transactions is subject to tax, and any loss sustained is allowable as a deduction where permitted by the provisions of the Internal Revenue Code.