JOHN WANAMAKER PHILADELPHIA, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 108505. Promulgated April 14, 1943.

*C. J. McGuire, Esq.,* and *Philip Bardes, Esq.,* for the petitioner.
*Dean P. Kimball, Esq.,* for the respondent.

940

OPINION.

HILL, *Judge:* The first issue for decision is whether petitioner is entitled to deduct from gross income as interest the amounts accrued on its books in the taxable years in respect of the certificate of so-called preferred stock, or whether such amounts were nondeductible dividends. This involves the primary question of whether or not the certificate represented an investment in stock of the corporation, on which it declared and paid dividends, or a loan made to the corporation on which it paid interest at the rate of 6 percent. It is the generally accepted rule that the name given to the instrument is not conclusive and that inquiry may be made as to its real character, but it is not lightly to be assumed that the parties have given an erroneous name to their transaction. "Its true nature will be determined by looking to its terms and legal effect." *O. P. P. Holding Corporation,* 30 B. T. A. 337, 340; affd., 76 Fed. (2d) 11.

The parties to the present transaction at the time the certificate was issued denominated it preferred stock, but petitioner on brief urges that the Supreme Court of Pennsylvania, in affirming the decree of the Court of Common Pleas, determined that the certificate represented an indebtedness because the payments thereon were referred to as interest, and that as to the nature of the instrument we are bound by such decision of the Pennsylvania court. We can not agree with petitioner's contention that either court judicially determined the character of the certificate or of the payments thereon. The Supreme Court of Pennsylvania in its opinion said that the question there involved was whether the complainant was entitled to receive "payments" at the rate of 6 percent per annum on the "10,000 shares of stock of the corporation" held in trust for her, or whether she was entitled to receive "such payments" only when the directors of the corporation declared "the payments as dividends."

In respect of a question such as we have here, "many are the criteria named to aid in the determination. Sometimes a particular one is called decisive,—or the most important test,—sometimes a combination of the elements sways the determination." *Commissioner* v. *Meridian & Thirteenth Realty Co.,* 132 Fed. (2d) 182. The question in the instant case is especially perplexing because of the contradictory terminology used in the certificate and related documents. The Supreme Court of Pennsylvania remarked in this connection that "it is unlikely this certificate has its counterpart in any issue of stock

ever made, and its so-called preference is a somewhat dubious one, unless it be in carrying a guaranteed 6% dividend."

A brief summary of the apparently conflicting or inconsistent provisions of the certificate, and attendant circumstances, may be helpful. Prior to the issuance of the so-called preferred stock on December 15, 1920, the corporation, John Wanamaker Philadelphia, was controlled by John Wanamaker, the individual, who owned all but 1,005 shares of the 75,000 shares of authorized outstanding common stock. All steps in the transaction involved here obviously were taken pursuant to his directions. On December 14, 1920, formal action was taken by the directors and stockholders to increase the corporation's authorized capital stock in the amount of $1,000,000 of preferred stock, subject to the provisions of subparagraphs (a) to (e), inclusive, set out in our findings of fact above. Plainly such action would not have been necessary or appropriate if it had been Wanamaker's intention to cause his corporation to issue a certificate of indebtedness. In (a) it was provided that "said preferred stock shall receive annual dividends of six (6) percent and not more, to be declared by the Board of Directors." In (d) it was provided that "after six months from the demise of John Wanamaker, the within stock shall begin to bear interest, and, after one year from date thereof, the first dividend shall be declared thereon." It was further provided that the preferred stock should have no voting power; that the recipient of the "interest" to be derived therefrom, should have no interest in the business beyond the amount of the "dividends" declared on such stock; that the holder of such stock should have no right of an accounting or any direction in the management of the business, and should not participate in the good will of the business; that upon dissolution, voluntary liquidation or sale of all the assets of the corporation, the payment of the preferred stock should be deferred to the payment of the common capital stock at par; and that after payment of the common stock and of the preferred stock, at par, any assets remaining should be distributed among the common stockholders.

There was no express provision that the payments on the preferred stock should be made out of profits or otherwise, but only that 6 percent "dividends" should be declared annually thereon by the board of directors. If such payments were intended to be true dividends, they could, of course, only be made out of profits. It appears also that the payments in the taxable years were in fact made out of profits, since the corporation had accumulated earnings in each of those years greatly in excess of the dividends declared. Furthermore, the Supreme Court of Pennsylvania seems to have reached the conclusion that the payments were intended to be made out of earnings, since the court stated in its opinion that it was unmistakenly disclosed that John Wanamaker wished to provide a certain, secured income for his

daughters and "concluded to do this by transmuting the million dollar indebtedness of the corporation to him into stock with a fixed annual payment thereon of six percent in the nature of a charge against the earnings of the corporation."

All amounts accrued and paid on the certificate in petitioner's fiscal years 1937 and 1938 were declared as dividends by its board of directors, except the item represented by the payment on December 12, 1937. All amounts accrued by petitioner in its taxable year 1938 were claimed as interest deductions in its income tax return for that year, but the amount accrued in 1937 was not claimed as a deduction; it was shown on its income tax return as dividends. In the capital stock tax returns filed by petitioner for the fiscal years 1933 to 1937, inclusive, the so-called preferred stock was listed as capital stock and its par value was included as part of the declared value for capital stock tax purposes. And in the capital stock tax returns for the fiscal years 1935 and 1937, the shares retired were shown as liquidating distributions.

From the foregoing summary of facts, it appears that John Wanamaker, the individual, did not clearly indicate his intention as to whether the corpus of the trust created by him was preferred stock or a certificate of indebtedness; and petitioner corporation did not consistently treat the certificate as representing either preferred stock or an indebtedness, nor the payments made thereon as interest or dividends. Some of the provisions tend strongly to suggest that the certificate was preferred stock; others tend to indicate that the payments were regarded as interest.

In *Commissioner* v. *Meridian & Thirteenth Realty Co.*, *supra*, reversing 44 B. T. A. 865, the court seems to have predicated its decision that the so-called preferred stock there involved was in fact preferred stock and not indebtedness on two grounds, (1) because the court concluded that the dividends were payable only out of earnings, and (2) because the preferred stock was subordinated to the rights of ordinary creditors. It is our opinion that the facts of the present case as strongly support the conclusion that the payments were to be made only out of earnings as did the facts of the cited case. In either case, if the payments were dividends, as they were declared to be, they could lawfully be paid only out of profits. The second and more conclusively established ground mentioned in the court's opinion, namely, the fact that the certificates were subordinated to the rights of ordinary creditors, is common to both cases.

In *Pacific Southwest Realty Co.* v. *Commissioner*, 128 Fed. (2d) 815, affirming 45 B. T. A. 426, it was held that the so-called preferred stock was in fact stock, notwithstanding the certificates contained the provision that in event the corporation failed to redeem the preferred stock as provided, the holder thereafter should have the right of a general creditor to sue for the principal value of the stock and for

any accumulated unpaid dividends. The court pointed out that the right to sue as a general creditor never arose, because all dividends were paid and all outstanding preferred stock was redeemed in the two taxable years. The court concluded that the payments on the preferred stock were dividends, since all payments in the tax years were declared and paid in usual corporate procedure by action of the board of directors, and thus came within the provisions of section 115 of the Revenue Acts of 1936 and 1938, which define dividends generally as distributions out of earnings or profits.

The fact that preferred stock has a definite maturity date is not necessarily conclusive, nor is restriction of dividends to payments out of earnings alone conclusive, although such fact "has a direct relation to the character of the right involved." The *essential* difference between a stockholder and a creditor lies in the fact that the stockholder makes an investment and takes the risk of the venture, while the creditor seeks a definite obligation payable in any event. *Commissioner* v. *Meridian & Thirteenth Realty Co., supra.* As stated in Paul & Merten's "Law of Federal Income Taxation," section 8.29, one of the chief elements distinguishing a loan from stock ownership is the fact that a preferred stockholder does not have an equality with the general creditors of the corporation.

In the case at bar it was provided in the certificate that the "preferred stock" should receive annual dividends to be declared by the board of directors; substantially all payments accrued in the taxable years were in fact declared by the board of directors and were paid out of accumulated earnings; the holder of the certificate, in the event of failure of redemption, did not have the right of a general creditor to sue for the principal value of the stock; not only was the "preferred stock" subordinated to the rights of general creditors, but upon dissolution, voluntary liquidation or sale of all the corporate assets, payment of the preferred stock was deferred to payment of the common stock. Thus, the principal was not a definite obligation payable in any event, but was subject to the risk of the enterprise.

For the reasons indicated, we hold that the certificate in controversy was preferred stock and not indebtedness, and that petitioner is not entitled to deduct from gross income as interest the amounts of the accrued payments. It follows also that premiums paid upon redemptions were obligations of the corporation to a stockholder, and are not deductible. *Pacific Southwest Realty Co., supra.*

On the first issue, respondent's determination is approved.

The second issue is whether petitioner is entitled to deduct from gross income for the taxable year 1938, as a partially worthless debt, 50 percent of its investment in bonds of Shelburne, Inc.

Petitioner made a determination of partial worthlessness of 50 percent of face value of the bonds and charged such amount off its

books in the taxable year by way of addition to a reserve for bad debts. It claimed the amount as a deduction in its income tax return. Respondent disallowed the deduction.

Section 23 (k) of the Revenue Act of 1936, under which petitioner claims the deduction, provides that there shall be allowed as deductions debts ascertained to be worthless and charged off within the taxable year, or in the discretion of the Commissioner a reasonable addition to a reserve for bad debts; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt as a deduction in an amount not in excess of the part charged off within the taxable year.

There is no doubt that these bonds would have been worthless in the taxable year to the extent claimed by petitioner had there been no pending plan of reorganization of the debtor corporation. However, respondent contends substantially that, because of the then pending plan of reorganization of the debtor corporation, which plan was subsequently carried into effect and pursuant to which petitioner exchanged its old bonds for bonds and stock of the new or reorganized corporation, its ascertainment of partial worthlessness of the old bonds can not be dissociated from the reorganization exchange and treated separately for income tax purposes; that the ascertainment of worthlessness occurred in connection with and as a part of the reorganization exchange, and hence neither gain nor loss can be recognized under the provisions of section 112 (b) (5) of the Revenue Act of 1936.[1]

If respondent's contention is well founded, as in our opinion it is, then section 112 (b) (5) is controlling under the stipulated facts set out hereinabove, and section 23 (k), *supra*, is not applicable. Cf. *Edith M. Greenwood*, 41 B. T. A. 664, 667.

In the *Greenwood* case, the taxpayer during the taxable year exchanged her old bonds for new bonds having a lesser face value, pursuant to a statutory reorganization of the corporation under section 77B of the Bankruptcy Act, and we held that, because of the nonrecognition provisions of section 112 (b) (3), she was not entitled to deduct the difference between the face amounts of her old and new bonds as a debt ascertained to be partially worthless

---

[1] SEC. 112. RECOGNITION OF GAIN OR LOSS.

    \*        \*        \*        \*        \*        \*        \*

(b) EXCHANGES SOLELY IN KIND.—

    \*        \*        \*        \*        \*        \*        \*

(5) TRANSFER TO CORPORATION CONTROLLED BY TRANSFEROR.—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange.

in the taxable year. See also *Hoagland Corporation*, 42 B. T. A. 13; affd., 121 Fed. (2d) 962; *Daniel MacDougald*, 44 B. T. A. 1046; *Louis E. Stoddard, Jr.*, 47 B. T. A. 584 (on appeal, C. C. A., 2d Cir.); and compare *Reed* v. *Commissioner*, 129 Fed. (2d) 908, affirming 45 B. T. A. 1130.

In substance, the transaction involved in the *Reed* case was held to be an exchange within section 112 (b) (5), *supra*, preventing recognition of gain or loss, on parity of the reasoning applied in the other cases under section 112 (b) (3). In its opinion the court said:

> It seems clear to us that section 23 (k) of the Revenue Act of 1936 is concerned with a debt which is continued to be held by the taxpayer and the allowance is in anticipation of a loss which will be occasioned when an accounting is made with the defaulting debtor. In the instant case, it is evident that there never will be an accounting. The petitioners effectively disposed of their Investment notes and thereby avoided such an accounting.
>
> \* \* \* \* \* \* \*
>
> Accordingly, we feel that the above transfer of the Investment notes \* \* \* for the Sutherland stock constituted an exchange within the intendment of section 112 (b) (5) \* \* \*
>
> \* \* \* \* \* \* \*
>
> Nor does our decision impose an undue hardship on the petitioners inasmuch as the deductibility of the loss, if any, is merely postponed until the petitioners dispose of the stock received in the exchange. That is the proper time to claim a deduction for such loss as has been sustained.

In the case at bar, unlike the cases cited above, the reorganization was not completed, and the exchanges of bonds of the old corporation for bonds and stock of the new corporation were not made within the taxable year. However, it seems to us, under the circumstances disclosed here, that fact is not of controlling importance.

The proceeding for reorganization of the old corporation under section 77B of the Bankruptcy Act was instituted on May 9, 1936, and a plan of reorganization was filed with the court under date of November 1, 1937. The plan was submitted to the bondholders for approval on December 20, 1937, and was accepted in writing by petitioner on January 4, 1938. Thus, the plan was formulated, filed with the court, submitted to the bondholders, and accepted by petitioner all within its taxable year ended January 31, 1938. This same plan, with unimportant modifications, was subsequently accepted by the holders of the requisite percentage of outstanding bonds, was approved by the court, and was fully consummated. And it was pursuant to the plan that petitioner exchanged its old bonds for new bonds and stock. Petitioner's treasurer represented the corporation on the bondholders' protective committee, and also in its behalf made the ascertainment of partial worthlessness of the bonds owned by it contemporaneously with his participation in the formulation of the plan of reorganiza-

tion. In the light of these facts, we think petitioner's ascertainment of partial worthlessness was so intimately a part of the reorganization exchange and so closely connected with the plan pursuant to which the exchange was made as to invoke application of the nonrecognition provisions of section 112 (b) (5).

At one and the same time, petitioner's treasurer determined that the Shelburne bonds were worth only 50 percent of face value for purposes of the plan of reorganization, and also for the purpose of enabling petitioner to claim a bad debt deduction. "It has been held repeatedly that all of the different steps taken under a reorganization plan must be regarded as component parts of the plan and can not be treated as isolated transactions in determining the tax consequences." *United Gas Improvement Co.*, 47 B. T. A. 715, 725.

*Henry R. Huntting*, 32 B. T. A. 495, cited by petitioner, is distinguishable on the facts from the instant case. There, at the close of the taxable year the taxpayer had not bound himself to accept the terms of a plan of reorganization; in fact there was no plan then pending, although a plan of reorganization had been theretofore formulated and abandoned. In such circumstance, we concluded that the statute did not require the holder of a partially worthless bond to anticipate a possible reorganization of the issuing corporation at some time in the future.

It may be contended that the ascertainment of partial worthlessness of a debt with the view of a deduction for income tax purposes is not a step or is not involved in a plan of reorganization of a debtor corporation and that the question of the allowance of such deduction should be determined independently of such plan. Whether or not that is true in the abstract, the facts in the instant proceeding clearly indicate that the claimed deduction for bad debt was taken in contemplation of an expected consummation of the pending plan of reorganization.

Where, as here, petitioner through its appointed representative participated in the formulation and submission of a pending reorganization plan for the purpose of conserving and protecting the value of the same indebtedness in respect of which it seeks a bad debt deduction, and where, as here, the plan was in active process of adoption and consummation and had been formally agreed to by the taxpayer in the taxable year, we think a situation is presented that requires consideration of the deductions sought in the light of the purposes and anticipated consequences of the pending reorganization plan. It will be borne in mind that petitioner, together with all other first lien bondholders, was to participate in the proposed reorganization in proportion to the face value of the bonds held. One result of such reorganization would be that under the provisions of section 112 (b)

(5) no gain or loss occasioned thereby could be recognized for income tax purposes. In the light of the circumstances here presented it would obviously be an evasion of such result of reorganization to permit the bad debt deduction claimed. It would nullify the nonrecognition provisions of the reorganization statute to permit a taxpayer to secure through a bad debt deduction a recognition of his loss while he is actively participating in the prosecution of a reorganization plan which when consummated would deny such recognition.

The two statutory remedies can not be simultaneously invoked. A pending plan of reorganization precludes deduction for partial worthlessness of a debt which constitutes, in material part, the basis of the proposed reorganization.

The present case, in our opinion, falls within the rule applied in the *Greenwood, Hoagland, Reed,* and other decisions above cited.

The foregoing is reason sufficient for the denial of the deduction for bad debt. However, it is also pertinent to observe that, because of the pending plan of reorganization, the correctness of the amount of partial worthlessness of the bonds determined by petitioner as a basis for bad debt deduction is open to successful challenge.

The proposed plan of reorganization provided that the holders of the old bonds should exchange them for bonds in the new corporation in an amount equal to 50 percent of the amount of the old bonds and a proportionate share of a majority of the authorized capital stock of the new corporation. The testimony of petitioner's treasurer was that the old bonds were determined to be worth only 50 cents on the dollar both for the purpose of bad debt deduction and as a basis of reorganization. Apparently this value was based on the underlying asset value. All of such assets were under the plan to be transferred to the new corporation. Petitioner held no stock in the old corporation but under the proposed reorganization it was to receive a proportionate amount of a specified majority of stock of the new corporation in addition to bonds of equal value to the old bonds. It is reasonable to deduce from the facts stipulated and in evidence that such stock would have substantial value beyond that of assuring to the bondholders control of the corporate affairs. This conclusion is supported not alone by the fact that the new corporation was to be reorganized on a basis expected to enable it to operate at a profit and take care of service charges on its obligations, but it also finds support in the fact that under the plan of reorganization rights were to be issued to junior lien bondholders to subscribe for a minority of the capital stock of the new corporation at $30 per share. Hence, it would appear that the old bonds, in view of the prospect of the adoption and consummation of the reorganization, had a value in excess of 50 percent of face by reason of the potential value of the stock of the proposed new corporation.

The ascertainment of partial worthlessness of the old bonds was obviously made without reference to the advantages which the pending reorganization plan held in prospect and did not, therefore, reflect correctly the amount, if any, of such partial worthlessness. The claimed deduction for bad debt is so intimately connected in time and substance with the pending plan of reorganization that it can not be dissociated therefrom for separate consideration.

Accordingly, on the second issue, respondent's determination is approved.

Reviewed by the Court.

*Decision will be entered for respondent.*

MURDOCK and VAN FOSSAN, *JJ.*, dissent.