CROWN IRON WORKS COMPANY, a corporation, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 15709.

United States Court of Appeals Eighth Circuit.

June 24, 1957.

O. A. Brecke, St. Paul, Minn., for petitioner.

Harry Marselli, Attorney, Department of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., and Robert N. Anderson and Charles B. E. Freeman, Attorneys, Department of Justice, Washington, D. C., on the brief), for respondent.

Before SANBORN, WOODROUGH and JOHNSEN, Circuit Judges.

SANBORN, Circuit Judge.

The Tax Court on August 29, 1956, in a decision not officially reported, sustained a determination of the Commissioner of Internal Revenue that there were deficiencies in the income tax of the petitioner, Crown Iron Works Company, for the years 1949 and 1950, of $927.56 and $5,025.31 respectively. The petitioner asks this Court to review and reverse the Tax Court's decision.

The nature of the controversy and the question for review are stated with clarity and brevity in the petition as follows:

"On December 30, 1944, Crown Iron Works Company entered into an agreement with Barney G. Johnson and members of his immediate family, whereby the Company agreed to purchase all of the outstanding common stock then owned by the Johnson family. This stock was paid for partly in cash and partly by the issuance of a class of so-called preferred stock, created for that purpose and redeemable in installments over a period of fifteen (15) years. The Petitioner deducted [in its income tax returns] the so-called dividends paid on this stock, as interest. The Respondent claims such payments were purely dividends and not deductible. The Tax Court of the United States has held that these payments were, in fact, dividends and not interest, and the sole question arising on this appeal involves the character of such payments, whether in the nature of interest or dividends."

Actually the question for this Court to decide is not whether the payments involved were interest on indebtedness within the meaning of § 23(b), Internal Revenue Code of 1939, 26 U.S.C.A. § 23(b), and deductible, or were dividends on preferred stock and nondeductible, but whether the determination of the Tax Court that the payments were dividends, and not interest, was clearly wrong.

The petitioner, in effect, asserts that the preferred stock issued to the Johnsons in connection with the purchase by petitioner of the common stock owned by them was, under the facts stipulated and the evidence adduced before the Tax Court, conclusively shown to have been issued "merely as security for the payment of the balance of the purchase price for the common stock sold by the Johnson family" to petitioner.

The contract for the purchase of the Johnson common stock was entered into January 2, 1945. It provided that $123,500 should be paid for it by petitioner as follows:

"The sum of $38,500.00 in cash to be paid on or before February 15, 1945, at your election, and the balance of $85,000.00 by the issuance to you of 850 shares of the new Class A Preferred Stock of the Crown Iron Works Company provided for in the amendment to its Articles of Incorporation approved by the Directors at their meeting of December 30, 1944, a copy of such amendment being hereto attached and made a part of this agreement. The Company further agrees that it will pay you interest at the rate of five per cent per annum on the sum of $85,000.00 from January 2, 1945, to the date of issue of said preferred shares."

Pursuant to this agreement, the petitioner amended its Charter to provide for the preferred stock. The amendment was approved by its stockholders on January 16, 1945. The purchase of the Johnson common stock was finally consummated on February 8, 1945. The Johnsons were paid $38,500 in cash, and 850 shares of preferred stock were issued to them.

The minutes of the meeting of the petitioner's stockholders held January 16, 1945, contain the following:

"The Chairman then explained to the stockholders that it was the intention of the Board of Directors to

issue $85,000.00 par value of the new preferred stock to B. G. Johnson and family in exchange for Class B stock held by him and the members of his family on the basis of $11.75 per share for such Class B stock and to pay in cash for any additional stock owned by Mr. Johnson and his immediate family over and above the amount acquired in exchange for preferred stock, all Class B stock so acquired to be retired and cancelled. After a further discussion of this action, Mr. Smith moved the adoption of the following resolution:

"Resolved that the shareholders of Crown Iron Works Company approve the action of the Board of Directors in acquiring the Class B stock owned by Barney G. Johnson and the members of his immediate family on the basis of $11.75 per share and the payment therefor by the issuance of $85,000.00 in par value of the new preferred stock and the payment of the additional purchase price in cash, said Class B stock so acquired to be retired and cancelled.

"This motion was duly seconded by Mr. Austin and adopted by the unanimous vote of all of the shareholders present."

Nothing appears in the minutes to indicate that the petitioner was intending to pledge this stock as security for the payment of a debt.

In its brief the petitioner points out that Johnson's first proposal to sell the stock owned and controlled by him was that the purchase price should be paid in cash; that this being unacceptable, his next proposal was that the stock be paid for partly in cash and partly in tangible property; that this offer was also unacceptable; that Johnson then offered to accept notes or bonds, but that petitioner was unwilling to issue such securities "because they did not wish to show such bonds as an indebtedness on the financial statement"; and that "the so-called Preferred Stock was devised as a means of carrying out the intent of the parties,

which was at all times to secure payment of the purchase price of this stock." The petitioner says that

"In short, the transaction amounted to simply this—Mr. Johnson wanted to sell his stock and terminate his connection with the Company. He did not wish to retain any stock interest. In order to overcome the objection of the Company to showing any obligations on their financial statement, he agreed to accept the so-called Preferred Stock as security for the payment of the balance of the purchase price. The entire purpose was to secure payment, not to retain a stock interest."

In ruling that the "so-called preferred stock" was in fact preferred stock, and was not intended as security for any corporate indebtedness to the Johnson family, and that the distributions made by petitioner to the holders of the stock were dividends and not interest on indebtedness, the Tax Court referred to the following factors: The securities were labeled "preferred stock"; the parties whose negotiations led to the issuance of the securities referred to them as "preferred stock"; petitioner on its books and records carried the securities as preferred capital stock and not as indebtedness; dividends were payable from earnings; upon liquidation the claims of preferred stockholders would be junior to the claims of creditors; and the holders of preferred stock, in default of dividends, were to have voting rights.

█ We are in accord with petitioner's contention that it is the intent of parties to a contract and what the contract really is, and not what form it takes, which is decisive. Just as a deed, absolute upon its face, may be shown to be a mortgage if that was the intention of the parties, so, no doubt, the issuance of preferred stock, or even common stock, can be shown to have been intended as security for debt and be given that status. We doubt, however, that there can be any form of corporate security which is to be regarded for income tax pur-

poses as corporate indebtedness, and for credit purposes as part of the capital structure of the corporation. That Johnson, upon acceptance of the preferred stock, became a secured creditor of the petitioner, and not a preferred stockholder, seems to us unrealistic.

■ It is our opinion that the issue in this case was an issue of fact for the Tax Court, and is not an issue of law for this Court. The ruling of the Commissioner that the payments in question were nondeductible because they were not payments on indebtedness was presumptively correct, and the burden was on petitioner to prove it wrong. Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212; Weiss v. Commissioner, 8 Cir., 221 F.2d 152, 155.

■ The question of intent, if at all doubtful either because of a conflict in the evidence or because different inferences reasonably may be drawn from undisputed facts, is a question of fact for the trial court, and only becomes a question of law for a reviewing court if the evidence is all one way or so overwhelmingly one way as to leave no doubt as to the fact. See and compare, Tyson v. Commissioner, 8 Cir., 146 F.2d 50, 54; Weiss v. Commissioner, supra, pages 155–156 of 221 F.2d; Milprint, Inc., v. Donaldson Chocolate Co., 8 Cir., 222 F.2d 898, 901–902.

In Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 743, 69 S.Ct. 1210, 1214, 93 L.Ed. 1659, the Supreme Court said: "Triers of fact are constantly called upon to determine the intent with which a person acted." A ruling that the Tax Court was compelled to find that the petitioner was, as a matter of law, entitled to deduct, as interest, dividend payments on the preferred stock which had been issued as a part of the purchase price of the common stock, would, in our opinion, not be justified.

■■ This Court has consistently refrained from trying issues of fact or substituting its judgment for that of a trial court respecting such issues. Weiss v. Commissioner, supra, page 156 of 221 F.2d, and cases cited; Pendergrass v.

New York Life Ins. Co., 8 Cir., 181 F.2d 136, 137. In this connection, we quote the following from Boehm v. Commissioner, 326 U.S. 287, 293, 66 S.Ct. 120, 124, 90 L.Ed. 78:

" * * * The circumstance that the facts in a particular case may be stipulated or undisputed does not make this issue any less factual in nature. The Tax Court is entitled to draw whatever inferences and conclusions it deems reasonable from such facts. And an appellate court is limited, under familiar doctrines, to a consideration of whether the decision of the Tax Court is 'in accordance with law.' 26 U.S.C. § 1141(c) (1), 26 U.S.C.A. Int.Rev. Code § 1141(c) (1). If it is in accordance, it is immaterial that different inferences and conclusions might fairly be drawn from the undisputed facts. Commissioner of Internal Revenue v. Scottish American Co., 323 U.S. 119, 65 S.Ct. 169 [89 L.Ed. 113]."

The decision of the Tax Court is affirmed.