Marin Canalways and Development Co., Inc. v. Commissioner.
Marin Canalways & Development Co. v. Commissioner
Docket No. 89717.
United States Tax Court
T.C. Memo 1961-333; 1961 Tax Ct. Memo LEXIS 13; 20 T.C.M. (CCH) 1705; T.C.M. (RIA) 61333; December 14, 1961
Robert M. Winokur, Esq., and Warren Wertheimer, Esq., for the petitioner. James Booher, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined deficiencies in petitioner's income tax as follows: Year
Deficiency
1955
$1,929.30
1957
1,367.53
1958
694.55
The issue is whether respondent properly disallowed interest expense deductions claimed by petitioner in 1957 and 1958 and carryback losses arising therefrom applied to 1955. Findings of Fact Some of the facts are stipulated and the stipulations, including the stipulated exhibits, are incorporated herein by this reference. Petitioner is a corporation organized under the laws of the State of California. *14 It filed its 1955, 1957, and 1958 income tax returns with the district director of internal revenue at San Francisco, California. On or about March 6, 1947, petitioner purchased from J. E. Davis and Alice Maude Davis (hereinafter sometimes called Davis) 953 acres of undeveloped vacant land located in Marin County, California, which has since been its principal asset. As part of the purchase price, petitioner gave a promissory note which read as follows: $50,000.00 San Rafael, California, March 6th, 1947. In installments as herein stated, for value received, I promise to pay J. E. DAVIS and ALICE MAUDE DAVIS, his wife * * * the sum of FIFTY THOUSAND AND NO/100ths ($50,000.00) Dollars with interest from date on unpaid principal at the rate of five (5%) per cent per annum; principal and interest payable in installments of TWO HUNDRED FIFTY AND NO/100ths ($250.00) DOLLARS, or more on the first day of each and every month, beginning on the first day of April, 1947 and continuing until said principal and interest have been paid. Each payment shall be credited first on interest then due and the remainder on principal * * *. Should default be made in payment of any installment when due *15 the whole sum of principal and interest shall become immediately due at the option of the holder of this note. * * * This note is secured by DEED OF TRUST. The deed of trust referred to in the promissory note was recorded in the official records of Marin County, California. In the latter part of 1947, the promissory note was in default and Davis (now sole holder of the note following the death of J. E. Davis) was threatening to foreclose. Petitioner, having found it impossible to raise needed financing with the promissory note as secured by the deed of trust outstanding, started negotiations with Davis. Petitioner believed that it could more easily raise funds if its obligation to Davis appeared in the form of preferred stock instead of a secured promissory note. Davis did not desire to foreclose and repossess the land. Petitioner and Davis entered into a written agreement which, among other things, called for Davis to surrender her promissory note and deed of trust, in return for which she was to receive preferred stock. On June 15, 1948, petitioner's board of directors prepared a "Certificate of Amendment to Articles of Incorporation of Marin Canalways and Development Co. *16 , Changing the Stock Structure," which was ratified by petitioner's stockholders on August 25, 1948, and recorded with the State of California on November 13, 1948. Its applicable provisions read in part as follows: This corporation is authorized to issue two classes of stock as follows: [Attributes of Preferred Stock] ( A) 50,000 shares of preferred stock having a par value of $1.00 each * * * [and] preferred as to assets upon liquidation and likewise as to earnings and dividends, as follows: Said preferred stock shall * * * have the right to 5 cents per share per annum as a preferred dividend, which sum shall be paid before any dividends or other moneys are paid upon any other stock * * *. Said preference as to dividends shall be cumulative. The said preferred stock shall not, however, participate in earnings beyond the face value thereof plus said 5% per annum. [Restrictions Upon Other Corporate Distributions] No earnings * * * and no receipts from the sale, rental or other exploitation of [petitioner's] property * * * shall be paid to the holders of any common stock * * * until $1.00 [per share] * * * and * * * 5% per annum [cumulative] has been paid upon *17 the * * * preferred stock * * *, except by * * * consent of the holders of 75% of said preferred stock. Said preferred stock shall in all respects be treated as a note secured by a purchase money mortgage on the assets of the corporation, as between the holders of the different classes of stock, but not as to third parties. None of the earnings * * * and * * * receipts from the sale, rental or other exploitation of the assets of the corporation * * * shall be invested * * * in the development of corporation assets * * * until the [preferred stock] holders * * * have been paid 50" on each share [$1.00 after 5 years] * * * plus * * * 5% per annum on said preferred stock to the date thereof, or until * * * consent * * *. [Voting Rights] The holders of said preferred stock shall have no right to vote * * * except * * *: In the event that any creditor of the corporation * * * shall commence any action seeking a receivership for the corporation, or any proceeding in insolvency or bankruptcy, or in the event said corporation shall itself file a petition for voluntary bankruptcy, or in the event any secured creditor shall file any notice of default, or any action for foreclosure *18 or shall publish any notice of default or notice of sale under any deed of trust or other indenture, then and in such event if such proceeding, action or notice of default shall remain on file and not withdrawn or cured for a period of sixty days, said preferred stock shall become voting stock and no other class of stock shall have a right to vote * * * until said default, action or proceeding has been wholly cured and withdrawn, or until the corporation has been liquidated or dissolved. * * * [Retirement Rights] At any and all times said corporation may discharge and retire all or any part of said preferred stock by paying to the holder thereof $1.00 per share, plus an amount equivalent to 5% per annum on said preferred stock to the date thereof. [Authority to Amend] Notwithstanding any provision of law, this Article IV of these Articles of Incorporation may not be amended nor may any other issue of stock be authorized than as herein set forth, nor may any of the rights of stockholders be changed except as herein noted, without the vote or written consent of the holders of 75% of the outstanding preferred stock. * * *
On May 5, 1949, petitioner applied to the *19 Division of Corporations, State of California, for permission to issue 50,000 shares of preferred stock to Davis. This application recites the acquisition of 953 acres of land from Davis and the note and deed of trust issued in connection therewith and states in part as follows: That an agreement has been made with said seller and holder of the Promissory Note and Deed of Trust, namely, ALICE MAUDE DAVIS, under which agreement she will cancel said Promissory Note and Deed of Trust in return for the issuance to her of 50,000 shares of preferred stock of this corporation at a par value of $1.00 each and an aggregate par value of $50,000.00, which preferred stock, with all of its rights and privileges, is more particularly described in Article IV of the Articles of Incorporation of MARIN CANALWAYS AND DEVELOPMENT CO., as amended * * *. That pursuant to said agreement with ALICE MAUDE DAVIS, it is proposed to issue to her 50,000 shares of preferred stock at a par value of $1.00 each with all the rights and privileges as more particularly set forth in Article IV of the Articles of Incorporation, as amended, in return for the cancellation of the Promissory Note and Deed of Trust hereinabove *20 referred to. On June 8, 1949, the Commissioner of Corporations, State of California, granted petitioner's request to issue 50,000 shares of preferred stock to Davis. This permit reads in part as follows: 2. To issue an aggregate of not to exceed 50,000 shares of its preferred stock to ALICE MAUDE DAVIS, in consideration of the cancellation of an indebtedness of applicant to her in the amount of $50,000, as set forth in its application filed with the Commissioner of Corporations on May 5, 1949, $1.00 of said indebtedness to be cancelled for each share so issued. A similar request had previously been denied because it provided for interest to be paid on the preferred stock, a provision which was deemed by the Commissioner of Corporations to be contrary to California law. Samuel W. Gardiner, the attorney who originally represented Davis in her dealings with petitioner, is also a stockholder in petitioner. He sent a letter dated October 21, 1949, to Davis which reads in part as follows: You will, I think, recall a rather ancient agreement we made on the matter of surrendering the note and deed of trust in exchange for stock. * * * You will recall, of course, that after the note *21 and deed of trust are surrendered, you will still have a position ahead of everyone else interested in the corporation. The design of the transaction is to put the corporation in a position where it can engage in development financing, and where it can give clear title to buyers or possibye encumbrancers. Therefore I ask that you drop me a short note directing me to carry out the deal and surrendering your note and authorizing a reconveyance. Davis replied: I have your letter of October 21st regarding the Canalways project. In compliance with your request, I am enclosing herewith the original note in the amount of $50,000, dated March 6, 1947, signed by M. Phillips as President of Marin Canal Ways & Development Co. Inc., and bearing interest at the rate of 5% per annum. The Deed of Trust securing the Note is also enclosed. The plan as outlined in your letter of October 21st is satisfactory to me and I hereby authorize the issuance of a Reconveyance to Canalways, for which I will receive 50,000 shares of Canalways Preferred stock. On October 7, 1949, petitioner issued its stock certificate number 5 for 50,000 shares of preferred stock to Davis. On or about October 27, 1949, petitioner *22 cancelled the promissory note and recorded a reconveyance of the accompanying deed of trust in the official records of Marin County, California. The original written agreement between petitioner and Davis has been lost. The following letter, dated September 15, 1954, was sent by petitioner to Davis. RE: MARIN CANALWAYS - INTEREST ON PREFERRED STOCK Dear Mrs. Davis: This letter will record the fact that we have agreed that interest on your preferred stock, or at least the computation of your 5 per cent. dividends on the preferred stock, will run from July 1, 1948. We appear to have misplaced all copies of the original contract, but this will confirm the date from which the dividends are to be computed. We now agree that we have at all times considered your preferred stock to be a substitute for a promissory note which you formerly held and which was from the corporation to you. We now further agree that the corporation is indebted to you in this manner and on this preferred stock for the sum of $50,000 plus interest at the rate of 5 per cent. per annum, computed from July 1, 1948. The selection and acceptance of this beginning date represents a compromise and shall be the *23 final and binding date, regardless of what prior instruments may have indicated. It will be appreciated if you will indicate your approval of this agreement on a copy of this letter and if you will return it to the undersigned. Very truly yours, MARIN CANALWAYS & DEVELOPMENT CO., /s/ Samuel W. Gardiner By Samuel W. Gardiner /s/ L. V. Waymire and L. V. Waymire /s/ M. Phillips and M. Phillips /s/ Raymond Shone and Raymond Shone Directors and Shareholders Accepted and Approved: /s/ Alice M. Davis, Alice M. Davis On February 8, 1956, petitioner's common stockholders executed a written agreement for the sale of petitioner's entire common stock issue to third parties for a price of $700,000. That agreement refers to Davis as the holder of petitioner's preferred stock. On March 6, 1956, petitioner applied to the Division of Corporations, State of California, for permission to sell 36 shares of its common stock. This application recites: That there are outstanding 50,000 shares of the preferred capital stock of said corporation, and that all of the same is held and owned by Alice Maude Davis. That said shares are evidenced by certificate number 5 issued October 7, 1949. *24 On October 5, 1959, petitioner's common stockholders executed an agreement whereby third parties obtained an option to purchase all of petitioner's common stock for $1,100,000. Said agreement reads in part as follows: 3. That in addition to the common capital stock of [petitioner], there is authorized fifty thousand (50,000) shares of five per cent (5%) cumulative preferred stock of the par value of One Dollar ($1.00) per share of which [petitioner] have been authorized to sell and issue by the Division of Corporations fifty thousand (50,000) shares which are now outstanding, such cumulative preference is computed from and after July 1, 1948, at the rate of Two Thousand Five Hundred Dollars ($2,500.00) per year and the dividends have been paid thereon in the sum of Twenty Thousand Dollars ($20,000.00). That pursuant to the provisions of the Articles of Incorporation, said preferred stock may be called for redemption at any time by the corporation. The capital stock section of petitioner's books and records contains an account which appears in part as follows: CAPITAL STOCK ISSUED TO ALICE M. DAVIS 5% PREFERRED STOCK Balance
6/15/48
Stock subject to being
treated as a note se-
cured by a purchase
money mortgage on the
assets of the Corpora-
tion
[$50,000]
*25 Petitioner's books of account show no liability for a note or interest to Davis. The following entry appears in petitioner's journal: [Debit]
[Credit]
[$50,000]
6/15/48
Notes Payable - Mrs.
[$50,000]
Davis Capital Stock Is-
sued - Pfd. Note ex-
changed for 50 M
[50,000] shares of Pfd.
stock 5%
From 1948 through 1956, petitioner made no payments to Davis. During this same period some of petitioner's common stockholders advanced petitioner funds for the payments of taxes and other current expenses for which petitioner issued written promissory notes. In 1957 petitioner informed Davis that it had decided to make at least a yearly payment of $5,000 to her. On March 27, 1957, petitioner's board of directors adopted the following resolution: * * *
WHEREAS, this corporation has agreed to pay Alice Maude Davis the sum of $10,000 as interest upon her purchase price promissory note and deed of trust (presently represented by preferred stock), and to pay such sum within or before the month of May 1957, it having heretofore been agreed between Mrs. Davis and this corporation that the preferred stock should be treated between *26 the parties as a note and as carrying interest from July 1, 1948 on the sum of $50,000 and at the rate of 5 per cent. per annum; * * *
NOW, THEREFORE, BE IT RESOLVED as follows: 1. That the officers of this corporation be and they are hereby authorized and directed to pay to Alice Maude Davis the sum of $10,000 as interest on the obligation to her on said note and/or preferred stock. * * *
Petitioner made the following payments to Davis, all of which were denominated as "Interest" payments in petitioner's books of account: April 9, 1957
$10,000
May 13, 1958
5,000
June 4, 1959
5,000
1960
5,000
Samuel W. Gardiner sent the following letter, dated May 9, 1957, to Davis: RE: MARIN CANALWAYS Enclosed herewith you will find check of Marin Canalways & Development Co. for $10,000. * * *
In view of the fact that you originally held a note from Marin Canalways and later substituted preferred stock with an express provision in the amended articles of incorporation, to the effect that between the parties this is to be regarded as a note, I think that the proper way to treat this payment is as interest. It seems perfectly clear that it is normal *27 income to you in any event, and I think that we will be justified in treating it as an interest payment. Unless you think that this is in error, it will probably be appropriate to show it on both tax returns as interest. Many months ago I discussed with Lillian [daughter of Davis] the possibility that we or some other purchaser might be able to buy all of your interest in the preferred stock for a flat sum, and that in such case you might be able to treat the entire item as a long-term capital gain. There is a possibility that a sale will materialize in the near future, and therefore it would be worth while for you or Lillian to explore this possibility. After crediting the present $10,000 you will have approximately $62,500 coming, including possible accrued dividend rights. Those dividend rights, however, have not yet materialized in a declaration of dividend, and I am inclined to think that until a dividend is declared you could sell your remaining interest in this preferred stock for $62,500 either on a cash basis or on some time arrangement. It it this whole matter which I think that you might find worth exploring. In her 1957 and 1958 Federal income tax returns, Davis identified *28 the payments received from petitioner as dividends and claimed a dividend-received credit as to them. Petitioner had earnings for the calendar year 1955 of $17,697.18. Petitioner had earnings for the calendar year 1957 of $4,558.43 before deduction of the $10,000 paid to Davis in 1957. Petitioner had earnings for the calendar year 1958 of $2,315.18 before deduction of the $5,000 payment made to Davis in 1958. During 1957 petitioner had earned surplus in excess of $10,000 and during 1958 had earned surplus in excess of $5,000. Petitioner's books and records contain an entry dated April 30, 1959, recording a $300,000 appreciation in land value. Davis was not, and is not, related to any of the shareholders of petitioner. She has never owned any common stock of petitioner. No one, other than Davis, has ever owned any preferred stock of petitioner. Petitioner deducted the payments to Davis of $10,000 in 1957 and $5,000 in 1958 as interest expense on its income tax returns and carried a resulting loss back to 1955. Respondent, in computing the alleged deficiency, determined that these payments to Davis were nondeductible dividends on preferred stock. The payments of $10,000 in *29 1957 and $5,000 in 1958 were dividends on preferred stock. Opinion Petitioner made payments of $10,000 in 1957 and $5,000 in 1958 to Alice M. Davis, a former holder of petitioner's note and mortgage who was the registered holder of all of petitioner's preferred stock at the time of the payments. Petitioner maintains that the preferred stock held by the preferred shareholder was only security for the debt to her which, although ostensibly canceled for petitioner's credit purposes, was continued as a debt between the parties. And thus, it is contended, the payments to her were not dividends on the preferred shares but were in fact interest deductible as such under section 163(a) of the 1954 Code. [1] See Bowersock Mills & Power Co. v. Commissioner, 172 F. 2d 904 (C.A. 10, 1949), reversing a Memorandum Opinion of this Court; but cf. Crown Iron Works Co. v. Commissioner, 245 F. 2d 357 (C.A. 8, 1957), affirming a Memorandum Opinion of this Court. *30 Respondent determined that these payments were dividends on the recipient's preferred stock. The burden is thus on petitioner and the question requires consideration of all the relevant facts. Crawford Drug Stores v. United States, 220 F. 2d 292 (C.A. 10, 1955). The earlier written agreement between the parties has been lost and, as can be expected after a period of 14 years, the testimony is conflicting as to what it contained and as to the presence of any ancillary understandings between the parties. And while the description adopted is not in any event conclusive, Kingsmill Corporation, 28 T.C. 330, 336 (1957), the documentary evidence here does not consistently describe the transaction, alternatively referring to the "debt," "preferred stock," "interest," and "dividends." See United States v. South Georgia Ry. Co., 107 F. 2d 3 (C.A. 5, 1939). A detailed analysis of the evidence would not be of any real assistance. We find nothing in it to disprove that what was denominated as preferred stock, [2] recorded on petitioner's books and documents as preferred stock, [3] represented to prospective purchasers of petitioner as such, [4] and treated *31 as preferred stock by its holder on her tax returns, [5] was actually preferred stock. Kingsmill Corporation, supra.
Petitioner relies upon several criteria which it maintains should compel a finding in its favor. The lack of voting rights is said to evidence debt, but this is equally a characteristic of preferred stock. Wilbur Security Company v. Commissioner, 279 F. 2d 657 (C.A. 9, 1960), affirming 31 T.C. 938 (1959). The need for financing, a business motive other than tax-saving, is advanced by petitioner as its reason for arranging the transaction as it did. J. I. Morgan, Inc., 30 T.C. 881 (1958), reversed on other grounds, 272 F. 2d 936 *32 (C.A. 9, 1959). In dealing with a similar contention in Universal Castings Corporation, 37 T.C. - (Oct. 31, 1961), we said: Petitioner argues that * * * [the form of preferred stock was] in response to business necessity. Of this we have no doubt * * *. That the * * * [preferred stock was] the carefully drafted results of the needs of this particular business at a given point in its history does not alter our search for the true relationship between the parties * * *. All such an argument means is that the needs of the business could best be met by instruments which did not create the debtor-creditor relationship. Petitioner further contends that the fact that Alice M. Davis was formerly a creditor and accepted this preferred stock, having dividend rights somewhat the same as her former creditor's rights, in exchange for her debt, should lead us to conclude that her preferred stock still remains debt for tax purposes. Bowersock Mills & Power Co. v. Commissioner, supra; Brush-Moore Newspapers, Inc., 37 B.T.A. 787 (1938). This, however, assumes that it would be impossible for a creditor to cancel a debt and accept in its place preferred stock which *33 would in no respect represent genuine indebtedness. The question here cannot be so simply resolved. In order to conclude that the relationship of debtor and creditor continued to exist, we must be satisfied that the basic elements of a debt were not simultaneously and purposely extinguished. All of the courts agree that the most important, if not the controlling factor, is whether the obligation provides for certainty of payment of a fixed sum on definitely fixed dates. Bowersock Mills & Power Co. v. Commissioner, supra, 172 F. 2d 904, at 907. See also John Wanamaker Philadelphia v. Commissioner, 139 F. 2d 644 (C.A. 3, 1943), affirming 1 T.C. 937 (1943); United States v. South Georgia Ry. Co., supra. The absence of any right to enforce the payment so provided is likewise significant in considering whether the transaction in reality still represents an indebtedness. Proctor Shop, Inc., 30 B.T.A. 721 (1934), affd. 82 F. 2d 792 (C.A. 9, 1936); Brush-Moore Newspapers, Inc., supra; United States v. South Georgia Ry. Co., supra. *34 The same is true of the right to participate on equality with other creditors. John Wanamaker Philadelphia v. Commissioner, supra.These elements are conspicuously absent from the new agreement before us here and furnish any necessary distinction from the Bowersock Mills case. Even though the amendment to petitioner's articles of incorporation called for the treatment of the preferred stock as between the parties "as a note secured by purchase money mortgage," no due date is there fixed for payment of the "note," nor, indeed, of any "interest" thereon. While certain restrictions, equally characteristic of preferred stock, see, e.g., Kingsmill Corporation, supra, are placed upon the activities of the corporation upon failure to pay stated sums, there is no direct obligation to make any payment at any specific time. Universal Castings Corporation, supra; Northern Refrigerator Line, Inc., 1 T.C. 824 (1943); cf. Proctor Shop, Inc., supra.After carefully considering the evidence, we conclude that these virtually fundamental features of debt, United States v. South Georgia Ry. Co., supra, are absent. Petitioner contends *35 that a due date for the payment of principal and interest was in fact embodied in the new arrangement. This is based on unconvincing testimony [6] that the missing agreement contained some such provision and, as a consequence, the entire obligation was payable at the rate of $250 a month with 5 percent interest on the unpaid principal until the total had been paid. Any such suggestion, in our opinion, must be the result of faulty recollection after so many years. It is not supported by other testimony and the documentary evidence. The necessary inference would be that by the time the first payment was made in 1957, the obligation would have been in default as to both principal and interest for some 10 years leaving a total of nearly $30,000 past due, even without reference to the acceleration clause which also appeared in the original note. All during this time the preferred shareholder took no action to enforce any such rights. Yet, according to petitioner's own brief, Mrs. Davis does not participate in * * * appreciation in value of the land. The significance of this is shown by the fact that Mrs. Davis does not benefit from the substantial appreciation which has taken place with *36 respect to the land. [Italics added.] It strains credulity beyond reason to assume that the preferred shareholder had the right not only to participate but to gather entirely the "substantial appreciation" when petitioner was completely in default for many years on what it now says was its agreement; and that as a creditor with a secured debt she could have obtained an enforceable judgment or even foreclosed on the security and taken over the entire property, and yet that she had not long since done so. The only logical explanation is that the preferred shareholder did not regard herself as anything but that, and did not retain any rights beyond those to which the preferred stock entitled her. The proposition is inherently incredible for an additional reason. On cross-examination, the same witness testified that even if the preferred stockholder had sold the preferred shares, she would still be a "noteholder" apparently in a position to collect the entire amount of principal and interest called for by the note, while the vendee of the stock could *37 still hold petitioner to the terms of the preferred stock. On the other hand, participation in earnings, which was provided for here [7] as the source of funds for both "face value" and "preferred dividend," is a typical characteristic of preferred stock as opposed to indebtedness. Crown Iron Works Co. v. Commissioner, supra; Lee Telephone Co. v. Commissioner, 260 F. 2d 114 (C.A. 4, 1958), affirming a Memorandum Opinion of this Court. The preferred stock here in question possesses attributes common to both preferred stock and to debt, see Lee Telephone Co. v. Commissioner, supra, and was, in fact, issued in exchange for debt. But nothing pertaining to it is inconsistent with preferred stock. See Kingsmill Corporation, supra. Petitioner had a financial problem which it solved by inducing its major creditor to release *38 her debt and accept in exchange the securities in controversy, so as to present a more favorable balance sheet. [No] doubt, the issuance of preferred stock, or even common stock, can be shown to have been intended as security for debt and be given that status. We doubt, however, that there can be any form of corporate security which is to be regarded for income tax purposes as corporate indebtedness, and for credit purposes as part of the capital structure of the corporation. Crown Iron Works Co. v. Commissioner, supra, 245 F. 2d 357, at 359-360; see also Northern Refrigerator Line, Inc., supra. We conclude that the payments made by petitioner were not deductible as interest on indebtedness. Decision will be entered for the respondent. Footnotes
1. SEC. 163. INTEREST. (a) General Rule. - There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness.↩
2. Northern Refrigerator Line, Inc., 1 T.C. 824↩ (1943). 3. Crown Iron Works Co. v. Commissioner, supra.↩
4. See Milwaukee & Suburban Transport Corporation v. Commissionert 283 F. 2d 279 (C.A. 7, 1960) affirming on this issue a Memorandum Opinion of this Court, certiorari denied 366 U.S. 965↩ (1961). 5. Parisian, Inc. v. Commissioner, 131 F. 2d 394↩ (C.A. 5, 1942), affirming a Memorandum Opinion of this Court.
6. The statement relied on is that "the exact obligation stated in the note would continue to be the corporate obligation."↩
7. The amendment to petitioner's articles of incorporation permitting it to issue the preferred shares provides: "Said preference as to dividends shall be cumulative. The said preferred stock shall not, however, participate in earnings beyond the face value thereof plus said 5% per annum." [Italics added.]↩