BROADWAY DRIVE-IN THEATRE,
INC., a Corporation, Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. 62 C 120(2).

United States District Court
E. D. Missouri, E. D.

June 20, 1963.

Flynn, Parker & Badaracco, Norman C. Parker, St. Louis, Mo., for plaintiff.

D. Jeff Lance, U. S. Atty., and John A. Newton, Asst. U. S. Atty., St. Louis, Mo., for defendant.

MEREDITH, District Judge.

This is an action for the recovery of income taxes and interest in the total amount of $1,916.78, alleged to have been wrongfully assessed and collected for the years 1955 through 1957. A major portion of the facts have been stipulated together with the documentary records. The remainder of the case was tried to the Court. This memorandum composes our findings of facts and conclusions of law. The question presented is whether interest accrued and interest paid on notes payable to shareholders of plaintiff corporation were properly deducted as interest, as contended by the taxpayer, or whether the notes actually represented contributions to equity capital by the shareholders with the accruals and pay-

ments being in the nature of non-deductible dividends as contended by the government.

The taxpayer Broadway Drive-In Theatre, Inc., was incorporated in the State of Missouri on September 3, 1953, with an authorized capital of 750 preferred shares at $100 par value and 45,000 common shares at $1.00 par value. Five hundred common shares were actually issued on or about September 10, 1953, to the following shareholders:

| | | No. of Shares | Per-cent |
|---|---|---|---|
| A. R. Parker | Pres. & Treas. | 120 | 24% |
| Edward E. Bischoff | 1st Vice Pres. | 120 | 24% |
| Benjamin Hess | 2nd Vice Pres. | 120 | 24% |
| Earl E. Rafferty | 3rd Vice Pres. | 120 | 24% |
| Norman C. Parker | Secretary | 10 | 2% |
| Francis C. Flynn | Ass't Secretary | 10 | 2% |

The Corporation was formed to erect, equip and operate a drive-in movie theatre among other projects. On July 23, 1953, land for a theatre site was purchased at 4300 South Broadway, St. Louis, Missouri, for $52,500, from W. H. Schiver Brick Company. The seller accepted a $27,500 deed of trust as a part of the purchase price and the balance came from a loan of $25,000 from PRBH Corporation. PRBH Corporation is owned by the four principal shareholders of taxpayer. The name is derived from the first letters in the names of Parker, Rafferty, Bischoff and Hess. Construction of the theatre started in the fall of 1953 and continued until the spring of 1954. The theatre was opened for business in the late spring of 1954.

The following three officers and stockholders of taxpayer corporation made payments to the corporation on the following dates and received in return therefor documents in the form of promissory notes, which are the subject of this controversy:

| Date | Stockholder | Amount | Due Date | Rate of Int. |
|---|---|---|---|---|
| 7-23-53 | Edward G. Bischoff | $ 5,000 | 7-23-54 | 5% |
| 7-23-53 | Benjamin Hess | 5,000 | 7-23-54 | 5% |
| 7-23-53 | Earl E. Rafferty | 3,000 | 7-23-54 | 5% |
| 10-23-53 | Edward G. Bischoff | 4,880 | 10-23-54 | 5% |
| 10-23-53 | Benjamin Hess | 4,880 | 10-23-54 | 5% |
| 10-23-53 | Earl E. Rafferty | 4,880 | 10-23-54 | 5% |
| 3-11-54 | Edward G. Bischoff | 5,000 | 3-11-55 | 5% |
| 3-11-54 | Benjamin Hess | 5,000 | 3-11-55 | 5% |
| 3-11-54 | Earl E. Rafferty | 5,000 | 3-11-55 | 5% |
| | | $42,640 | | |

In addition to the $42,640 advanced by the three shareholders and the $500 original stock subscriptions, the corporation obtained a loan of $30,000 on December 24, 1953, from Quincy Drive-In Refreshments Company, secured by ten-year income from concessions. On March 28, 1954, a loan of $30,000 was obtained from Confection Cabinet Company of Chicago, also secured by income from concessions. On April 15, 1954, a loan of $75,000 was obtained from the Manchester Bank, se-

cured by the real estate and guaranteed by the PRBH corporation. The taxpayer corporation used $27,500 of the proceeds of this loan to pay off the loan of W. H. Schiver Brick Company and the balance was used in construction. The PRBH Corporation made further unsecured loans to taxpayer in the amounts of $500 on May 17, 1954, and $2,500 on May 27, 1954.

No payment was made or demanded by the corporation when the shareholders' notes became due after one year. Taxpayer continued to accrue interest. On July 19, 1956, taxpayer purchased the 120 shares of Rafferty and repaid his advances together with accrued interest for a total of $62,000, of which $15,000 was paid in cash at that time and the balance by note of $47,000. This was broken down to reflect $47,405.93 as Rafferty's shareholder's interest and $12,880 for "loans" plus accrued interest in the amount of $1,714.07. On July 1, 1957, taxpayer made payments of accrued interest on the "loans" in the amount of $1,595.14 each to Bischoff and Hess. As of December 31, 1957, the corporation still had accrued interest owing to Bischoff and Hess in the amount of $744. It is the interest which the corporation accrued during 1955, 1956 and 1957 and paid during 1956 and 1957 on the above sums which is in dispute. The government contends that these advances were in the nature of capital contributions and, therefore, the so-called interest accrued and paid was non-deductible. The taxpayer contends that the sums contributed by the shareholders represent bona fide indebtedness and that the interest paid or accrued is deductible.

Section 163(a) of the Internal Revenue Code of 1954 is as follows:

"There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness".

■ The question of whether the advances made were loans or capital contributions is one of fact and no one fact is controlling. John Kelley Co. v. Com-

missioner, (1946) 326 U.S. 521, 66 S.Ct. 299, 90 L.Ed. 278. Crown Iron Works Co. v. Commissioner of Internal Rev., (C.A. 8, 1957) 245 F.2d 357.

■ It is the intent of the parties to the instrument rather than the form of the instrument that controls. Crown Iron Works v. Commissioner of Internal Rev., supra. Wetterau Grocer Co. v. Commissioner of Internal Rev., (C.A. 8, 1950) 179 F.2d 158.

■ The burden is on the taxpayer to show that the payments accrued or paid were, in fact, interest on indebtedness rather than dividends on capital contributions. Wetterau Grocer Co. v. Commissioner of Internal Rev., supra. Lockwood Realty Corp. v. Commissioner, March 31, 1958, 17 T.C.M. 247.

■ The notes in question prescribe a definite interest. They are payable at a fixed date and place. On their faces they are negotiable. These are certainly evidences of a debt. However, no payment was made by the corporation when the notes became due after one year. Payment was not demanded by the shareholders. The notes would become due within months after the theatre opened. Considering the outstanding indebtedness of the corporation, it is not reasonable to assume that the parties intended at the time of issuing the notes that they would be paid when due. Shareholder Rafferty testified that he did not expect to be paid back if the business was not successful.

An analysis of the cash flow sheets of the corporation shows that without the shareholders advances of July 23, 1953, October 23, 1953, and March 11, 1954, the taxpayer would have had negative balances in its cash balance and would have been unable to pay for construction in progress and to meet day-by-day operating expenses. Thus, it appears that the advances of the shareholders were used to acquire capital assets of the venture.

Further, it was the testimony of Parker that the first loan from the shareholders was made to secure some capital with

which to operate the business. This suggests the possibility that in securing loans from sources other than shareholders, the shareholders' advances were represented as being at the risk of the business.

Clearly, $500 was not adequate to commence the operation since cost of the land and construction of the building for the theatre was at least in excess of $150,000. Considering only the stockholders' advances, the debt-capital ratio is in excess of 85 to 1. Considering all other loans, the debt-capital ratio stands at $205,640 to $500, or in excess of 411 to 1 at the time the initial financial outlay was completed

■ As stated in Dobkin v. Commissioner of Internal Rev., 15 T.C. 31 at 33 [affirmed per curiam (C.A. 2, 1951) 192 F.2d 392]:

"When the organizers of a new enterprise arbitrarily designate as loans the major portion of the funds they lay out in order to get the business established and under way, a strong inference arises that the entire amount paid is a contribution to the corporation's capital and is placed at the risk of the business."

The books of taxpayer corporation show that Bischoff, Hess and Rafferty advanced $13,000 on July 23, 1953, and $15,000 on October 23, 1953. These amounts, which apparently included the three shareholders' capital contributions of $500, initially were placed in the stockholders' suspense account. On December 31, 1953, an adjusting entry was made debiting the stockholders' suspense account $360 to account for the three shareholders' capital contributions. This left a total of $27,640 in the stockholders' suspense account which was credited to "notes payable to stockholders". Further, as previously noted, no payment was made by the corporation when the notes became due. While A. R. Parker testified that renewal notes were issued, he was unable to say who had the renewal notes. They were not in evidence. When payment was made to Rafferty on July

19, 1956, it included both the shares and the repayment of the advances together with interest for a total amount of $62,-000. It thus appears to the Court that the shareholders and the corporation treated both the capital and the advances as a package. Such a factor was present in The Colony, Inc., (1956) 25 T.C. 30.

The advances were made substantially in proportion to stockholdings by three of the four leading shareholders, each of whom owned 24% of the stock. A. R. Parker, the fourth shareholder owning 24% of the shares, made no advances to the corporation. He was in the position of contributing managerial services as he was president and had previous experience in operating drive-in theatres.

Plaintiff has cited a number of cases to the effect that the debt-equity ratio is not controlling. We agree that the debt-equity ratio is not decisive, but it is one factor in determining the intent of the parties to the transaction. No evidence has been presented to this Court respecting the business purpose of plaintiff in casting the advances as loans. Such a business purpose was found in Earle v. W. J. Jones & Son, (C.A. 9, 1952) 200 F.2d 846. Cf. however, Wilshire & West. Sandwiches v. Commissioner of Int. R., (C.A. 9, 1949) 175 F.2d 718, where the capital contributions of the shareholders amounted to $30,000 and the loans of the shareholders totalled $25,000.

Bijou-Pensacola Corporation v. United States, (N.D.Fla., 1959) 172 F.Supp. 309, is instructive on the lack of applicability of the cases relied on by plaintiff, Rowan v. United States, (C.A. 5, 1955) 219 F.2d 51, Sun Properties v. United States, (C.A. 5, 1955) 220 F.2d 171, and Wilshire & West. Sandwiches v. Commissioner of Int. R., supra, to a situation in which the funds were advanced solely for the purpose of construction and prior to the time operation began. Miller's Estate v. Commissioner of Internal Rev., (C.A. 9, 1956) 239 F.2d 729, likewise is not controlling for the Court there was dealing with an established business and found that the parties could justly con-

template that notes could be paid off out of earnings in a relatively short period.

Similarly, cases relied on by the government, although reaching different results, may be distinguished. The Briggs Co. v. Commissioner, (May 14, 1946) 15 T.C.M. 366, Gunn v. Commissioner, 25 T. C. 424, affirmed sub nom. Perrault v. Commissioner, (C.A. 10, 1957) 244 F.2d 408.

More closely in point are The Colony, Inc., supra, Dobkin, supra, and Lockwood Realty Company v. Commissioner, (1958) 17 T.C.M. 247, affirmed in respect to the interest-dividend question, (C.A. 6, 1959) 264 F.2d 241. However, even this latter case is distinguished from the present facts by the written agreement between the shareholders not to sell the shares or call the notes except upon conditions therein provided.

It is clear, however, that each case depends upon its own facts and all the surrounding circumstances must be examined to determine the intent and substance of the transaction. As stated in John Kelley Co. v. Commissioner, supra, 326 U.S. at 530, 66 S.Ct. at 304, 90 L. Ed. 278:

> " * * * There is no one characteristic, not even exclusion from management, which can be said to be decisive in the determination of whether the obligations are risk investments in the corporations or debts."

We are here faced with the advances of shareholders to a new corporation prior to its commencing operation. Considering the debt-equity ratio; the fact that the taxpayer would have been unable to pay for construction and to meet day-to-day operating expenses; the initial placement of both capital contributions and "loans" in the stockholders' suspense account; the first payment of a shareholder "loan" and interest approximately two years after it was due to Rafferty at the same time that the corporation purchased his shares; the fact that it could not reasonably have been expected at the time of issue that the notes would be paid on the due date and that renewal notes were not issued and that no demand was made for principal or interest; the fact that the loans were made in similar proportion to the shareholders' ownership of the corporation; the fact that the first "loan" was made to secure capital to begin operations and the latter loans to complete construction of the theatre; the conclusion is inescapable that the shareholders intended that their advances be at the risk of the business. The plaintiff has not met its burden of showing the payments made or accrued by it were in fact interest paid or accrued on indebtedness.

Accordingly, judgment will be entered in favor of defendant and the complaint will be dismissed with costs to be assessed against the plaintiff.